Nicholas **RUSSO**, Plaintiff,

v.

**CITY OF HARTFORD**, et al., Defendants.

Nos. Civ.A. 397CV2380JCH, Civ.A. 300CV2382JCH, Civ.A. 300CV1794JCH.

United States District Court, D. Connecticut.

Aug. 2, 2001.

---

James S. Brewer, West Hartford, CT, John T. Forrest, LLC, Hartford, CT, for Plaintiff.

Helen Apostolidis, Linda L. Yoder, Charles L. Howard, Gregg Peter Goumas, Kara L. Van Ausdall, Shipman & Goodwin, Joseph W. McQuade, Kainen, Escalera & McHale, PC, Stephen Richard Sarnoski, Attorney General's Office, Lynn D. Wittenbrink, Attorney General's Office, Peregrine Alban Zinn–Rowthorn, Attorney General's Office, Frank J. Szilagyi, Silvester, Daly & Delaney, Hartford, CT, for Defendants.

**RULING ON MOTIONS TO DISMISS
[DKT. NOS. 66, 68, 70, 74, 77, 79,
81, 83]**

HALL, District Judge.

## I. INTRODUCTION

This litigation involves federal civil rights actions brought pursuant to 42 U.S.C. § 1983 by the plaintiff, Hartford Police Detective Nicholas Russo ("Russo"), against state criminal prosecutors, Hartford police officers and supervisors, the Hartford Police Union and union officers, and the City of Hartford. Russo alleges several federal constitutional and state law violations arising out of his arrest on December 16, 1997 and suspension from prior police duties. Russo filed three related lawsuits, *Russo v. City of Hartford, et al.* (3:97cv2380 (JCH)), *Russo v. Bailey, et al.* (3:00cv1794 (JCH)), and *Russo v. Marquis, et al.* (3:00cv2382 (JCH)), which have been consolidated for purposes of discovery.[1] Pending before the court are motions to dismiss filed by the defendants in each of the consolidated actions.

## II. FACTUAL BACKGROUND [2]

Russo has been employed as a police officer for the City of Hartford Police Department since 1981. For more than six years, Russo served as a Detective with CAPers, the Crimes Against Persons division of the Hartford Police Department. Russo was also assigned to the Federal Violent Crimes Unit in Hartford beginning in June of 1995. He served as a detective in both capacities until he was arrested on December 16, 1997.

On or about January 10, 1997, David Kenary, a lieutenant assigned to the CAPers division, ordered Russo to bring a doctor's note to explain his absence from work. Russo brought a note from his physician stating that he had been absent from work for three days because he was being treated for influenza. At about the same time, Russo was ordered to submit to a drug test, the results of which were negative.

In the spring of 1997, while Russo was assigned to the Federal Gang Task Force, Sergeant Daryl Roberts, Lieutenant David Kenary, and Sergeant Charles Lilley, ordered Russo to report to them each morning with an itinerary of his schedule for the day. On several occasions, they also ordered him to report back at the end of the day with a signed memo from the U.S. Attorney's Office detailing what Russo had done that day.

During the same time period, anonymous allegations were made that Russo was suicidal. As a result, Chief of the Hartford Police Department, Joseph Croughwell, ordered Russo to bring in a note from a therapist to verify he was fit to work. On or about March 9, 1997, Russo was required by the City of Hartford and his supervisors to take a drug test.

On June 15, 1997, a murder took place in the City of Hartford. Both the City of Hartford Police Department and the Federal Violent Crimes Unit of Hartford investigated the murder. Russo was involved in the investigation as a member of the Federal Gang Task force and helped cause the arrest of a suspect. Russo's involvement in the arrest and his affiliation with the federal authorities caused tension within the CAPers division of the Hartford Police Department.

---

1. Russo also filed a proposed class action, *Russo v. CVS Pharmacies, Inc., et al.* (3:00cv1852 (JBA)), stemming from related facts but naming different defendants and raising different issues. That action has not been consolidated.

2. The following facts are based on allegations made in the complaints.

220

On or about September 9, 1997, Lieutenant Kenary contacted the Drug Enforcement Administration ("DEA") to initiate a criminal investigation involving Russo's physician.

On or about October 13, 1997, Russo confidentially told Stephen Kumnick, an Inspector in the State's Attorney's Office, that the federal authorities were planning a corruption probe of the Hartford Police Department and that Russo was assisting in the investigation. On or about October 30, 1997, Kumnick notified James Rovella, a detective assigned to the CAPers division of the Hartford Police Department, about the federal corruption probe. Rovella notified two possible targets of the probe, Sergeant Christopher Lyons and Detective Robert Lawlor. Chief State's Attorney John Bailey notified Chief Croughwell of the probe.

On October 30, 1997, Chief Croughwell, in the presence of Lawlor and Lyons, notified Russo that he had heard a rumor that City of Hartford police detectives were under investigation by federal authorities for unlawful acts during the June 15, 1997 murder investigation. Lawlor and Lyons threatened Russo. On or about October 31, 1997, Bailey sent a memo to Chief Croughwell detailing Russo's conversation with Kumnick regarding Russo's cooperation with federal authorities.

On or about October 31, 1997, a criminal investigation of Russo's drug use officially began. In the course of the investigation, a DEA Diversionary Investigator, Kenary, and, under orders from Hartford Police Captain Jeffrey Flaherty, Hartford Police Detective Stephen Hajdasz traveled to various pharmacies in the Hartford area and obtained Russo's pharmaceutical records.

On November 4, 1997, Captain Flaherty and two other police sergeants confronted Russo at the United States Attorney's office in New Haven, Connecticut. Captain Flaherty stated that Chief Croughwell ordered that Russo be taken to Hartford in order to immediately submit to a drug test in Bloomfield, Connecticut. Captain Flaherty took Russo's firearm and escorted Russo into the back seat of an unmarked police vehicle. Captain Flaherty then drove Russo back to Hartford. While en route to Hartford, Flaherty told Russo that Chief Croughwell had ordered that Russo was not to receive his firearm and was to be placed on sick leave until Chief Croughwell received the results of the drug test.

Russo was taken to Medtox Laboratories in Bloomfield, Connecticut and was physically led to the facility where he was required to submit to a drug test. While at Medtox, Russo was questioned by Flaherty. He was never advised of his *Miranda* rights.

After the drug test, Russo was taken to the Hartford Police Department and was released. Captain Flaherty told Russo that Chief Croughwell had changed his mind and wanted Russo to either report to work in a limited capacity (no gun or filed duty) or voluntarily use his sick leave. In addition, Captain Flaherty stated that Chief Croughwell had ordered Russo not to drive a car home and not to drive a car to work the next day. On Chief Croughwell's orders, a police sergeant drove Russo home.

Russo alleges that Chief Croughwell, Captain Flaherty, and others disseminated information about Russo's drug test to the general population of the police department before the results of the test were returned. Further, on or about November 5, 1997, members of the Hartford Police Department revealed information about the drug test to departmental personnel and others, including a newspaper reporter. The reporter contacted Russo about the drug test and other allegations of mis-

conduct and indicated she intended to print a story about Russo.

On or about December 2, 1997, Chief Croughwell's sick leave order was rescinded and Russo was ordered back to work. Russo was transferred to the fraud division without his weapon and was restricted to the building. Russo's desk was physically removed from CAPers, and his personal belongings were seized and never returned to him.

On December 15, 1997, Flaherty and DEA Diversionary Investigator Brown met with State Attorney's representatives Lawrence Skinner, Joan Alexander, James E. Thomas, Herbert Carlson, Jr., and Joseph E. Hammick. An arrest warrant for Russo was drafted and, on December 16, 1997, Russo was arrested by the State's Attorney's Office and charged with four counts each of Forgery in the Second Degree and Illegally Obtaining a Controlled Substance by Fraud. Chief Croughwell suspended Russo from duty without pay pending the outcome of the criminal matter.

On June 28, 1998, allegedly due to the animosity toward the Russo in Hartford, Russo's criminal case was transferred from the Hartford State's Attorney's Office to the New London State's Attorney's Office. Thomas failed to transfer his corresponding files and continued to receive information regarding the criminal investigation of Russo from the DEA and the Hartford Police Department.

On September 15, 2000, all criminal charges against Russo were dropped.[3] Act-ing Chief of Police for the City of Hartford, Robert Rudewicz, continued Russo's suspension from the Hartford Police Department without pay from September 15, 1997 until November 26, 2000. Rudewicz informed Russo that he was scheduled to have his police badge returned to him on December 11, 2000. On December 4, 2000, Bruce Marquis was appointed as Chief of Police for the Hartford Police Department. On December 11, 2000, Russo was notified that Marquis had decided not to return Russo's badge and identification.

The Hartford Police Union did not challenge Russo's suspension or take action to effectuate Russo's reinstatement at any time. Russo alleges that the union's failure to act was in furtherance of an implicit agreement between the Hartford Police Department defendants and the union defendants. From December 16, 1997 to December 31, 1998, Lawrence Reynolds was the president of the Hartford Police Union. From January 1, 1999 to the present, Michael Wood has been the president of the union. During all times relevant to this action, Thomas Hardwick was the vice-president of the Hartford Police Union.

## III. DISCUSSION

### A. Standard

The several defendants in this case have filed motions to dismiss pursuant to Rule 12(b)(6) and Rule 12(b)(1) of the Federal Rules of Civil Procedure. A Rule 12(b)(1) motion to dismiss based on lack of subject matter jurisdiction can be either a

---

**3.** On August 15, 2000, the Connecticut Superior Court, after hearing limited argument on Russo's motion to suppress, found that Russo had the requisite expectation of privacy necessary to assert a challenge to the admissibility of his prescription records, regardless of the fact that the records were obtained from a third party. *State of Conn. v. Russo*, 2000 WL 1228004, at *5 (Conn.Super. Aug. 15, 2000).

On September 14, 2000, the court granted Russo's motion to suppress. Transcript, September 14, 2000, Mem. of Law in Supp. of Mot. to Dismiss (Dkt. No. 78), Ex. C at 15–33 – 15–34. The State of Connecticut then made a motion to dismiss the charges against Russo, which the court granted. *Id.* at 15–37. On September 21, 2000, the State of Connecticut appealed, and the appeal is still pending.

facial attack or a factual attack. A facial attack merely questions the sufficiency of the pleading. When a defendant raises a facial attack to subject matter jurisdiction, the court takes the allegations in the complaint as true and draws all inferences in favor of the non-movant. 2 James Wm. Moore et al., *Moore's Federal Practice* § 12.30[4] (3d ed. 2001). When a court reviews a complaint under a factual attack for lack of subject matter jurisdiction, it must determine whether the factual predicate for subject matter exists or not. *Id.; United Transp. Unions 385 & 77 v. Metro–North Commuter,* 862 F.Supp. 55, 57 (S.D.N.Y.1994). Therefore, there is no presumptive truthfulness to the facts alleged in the complaint, and the court may consider evidentiary matter presented as an affidavit or otherwise in addition to the complaint. *Kamen v. AT & T Co.,* 791 F.2d 1006, 1011 (2d Cir.1986).

A motion to dismiss filed pursuant to Rule 12(b)(6) can only be granted if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). In considering such a motion, the court must accept the factual allegations alleged in the complaint as true and all inferences must be drawn in the plaintiff's favor. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), *overruled on other grounds, Davis v. Scherer,* 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984). A Rule 12(b)(6) motion to dismiss cannot be granted simply because recovery appears remote or unlikely on the face of a complaint. *Bernheim v. Litt,* 79 F.3d 318, 321 (2d Cir.1996). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Id.* (quotation omitted). "[B]ald assertions and conclusions of law will not suffice to state a claim. . . ." *Tarshis v.*

*Riese Org.,* 211 F.3d 30, 35 (2d Cir.2000) (citations omitted).

### B. *Russo v. City of Hartford, et al.* (3:97cv2380 (JCH)) [Dkt. Nos. 66, 68]

In this action, Russo alleges that Chief Croughwell, Captain Flaherty, and the City of Hartford deprived him of constitutional rights under the First, Fourth and Fifth Amendments to the United States Constitution as well Connecticut common law. All three defendants have moved to dismiss the case on various grounds.

#### 1. Municipal Policy or Custom

The City of Hartford argues that Russo fails to state a § 1983 claim against it in the first count of the complaint because he does not allege a municipal policy or custom. A municipality cannot be held liable in a § 1983 action under a theory of *respondeat superior* merely because it employs a tortfeasor. *Monell v. Dept. of Soc. Services of the City of New York,* 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). It is only when the execution of a municipality's "policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the [municipality] as an entity is responsible under § 1983." *Id.* at 694, 98 S.Ct. 2018. "In short, a municipality can be sued under § 1983, but it cannot be held liable unless a municipal policy or custom caused the constitutional injury." *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 166, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993). Thus, in order for a municipality to be liable under § 1983, a plaintiff is required to plead and prove the existence of an official policy or custom that causes the plaintiff to be subjected to a denial of a

constitutional right. *Zahra v. Town of Southold,* 48 F.3d 674, 685 (2d Cir.1995).

■ When considering whether a plaintiff has stated a claim for municipal liability under § 1983, the court may not apply a "heightened pleading standard," that is, a standard more stringent than the usual pleading requirements of Federal Rule of Civil Procedure 8(a). *Id.* at 168, 113 S.Ct. 1160. Rule 8(a)(2) requires that a complaint include only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2).

■ In this case, Russo alleges that "[a]t all times, Chief Croughwell was the ultimate decisionmaker in the City of Hartford with regard to any and all decisions to arrest, detain, order drug testing, and all other actions taken against Mr. Russo." Complaint (Dkt. No. 1) ¶ 37. A single decision by "municipal policy makers" can be sufficient to impose liability. *Pembaur v. City of Cincinnati,* 475 U.S. 469, 480, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986). Further, "an 'official policy' within the meaning of *Monell* [can] be inferred from informal acts or omissions of supervisory municipal officials." *Turpin v. Mailet,* 619 F.2d 196, 200 (2d Cir.1980). Therefore, by pleading that Chief Croughwell was the ultimate decision maker with regard to the policies at issue in this case, Russo has stated a § 1983 claim upon which relief can be granted against the City of Hartford.

## 2. Due Process

The defendants argue that the due process claim should be dismissed for two reasons. First, the defendants argue that Russo failed to allege he was deprived of a property right. Second, the defendants argue that Russo has not exhausted his administrative remedies.

To prevail on the procedural due process claim, a plaintiff must establish that state action deprived him of a protected property or liberty interest. *White Plains Towing Corp. v. Patterson,* 991 F.2d 1049, 1061–62 (2d Cir.1993). While the Fourteenth Amendment's procedural requirements protect property, that property can take many forms. *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). The term " 'property' denotes a broad range of interests that are secured by 'existing rules or understandings.' " *Perry v. Sindermann,* 408 U.S. 593, 601, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972) (quoting *Roth,* 408 U.S. at 577, 92 S.Ct. 2701). "A person's interest in a benefit is a 'property' interest for due process purposes if there are such rules or mutually explicit understandings that support his claim of entitlement to the benefit and that he may invoke at a hearing." *Id.* (citation omitted).

■ "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). A person does not have a property interest in the insubstantial aspects or discretionary benefits of their employment. *Boyd v. Schembri,* 1997 WL 466539, at *3 (S.D.N.Y. Aug. 13, 1997); *McNill v. New York City Dep't of Correction,* 950 F.Supp. 564, 572 (S.D.N.Y.1996). However, a plaintiff can have a property interest in contractual employment rights and employment rights otherwise secured by state law. *Ezekwo v. New York City Health & Hospitals Corp.,* 940 F.2d 775, 783 (2d Cir.1991).

■ In the complaint filed in this case, Russo alleges that on November 4, 1997, Flaherty told Russo that Croughwell had ordered Flaherty to take Russo's firearm and ordered Russo to be placed on sick

leave until the results of the drug test taken that day were received. Complaint (3:97cv2380, Dkt. No. 1) at ¶¶ 16, 19. The complaint further alleges that Croughwell changed his mind and allowed Russo to report to work in a limited capacity or to voluntarily use sick leave. *Id.* ¶ 27. Drawing all inferences in favor of the plaintiff, such allegations state a due process claim upon which relief can be granted. Russo may be able to demonstrate that, based on his contract or on some other basis, he had a property interest in the type of work he did prior to the drug test and such interest could not be denied by limiting that work without due process. The court therefore does not find that it appears beyond doubt that the plaintiff can prove no set of facts by which to establish that he had a property right in his position in the police department.

█ The defendants next argue that the due process claim should be dismissed because Russo has not exhausted his administrative remedies and, therefore, the court lacks subject matter jurisdiction. Because the defendants make a factual challenge to the court's subject matter jurisdiction, the court considers evidentiary matter in addition to the complaint. 2 James Wm. Moore et al., Moore's Federal Practice § 12.30[4] (3d ed. 2001).

The defendants argue that Russo is subject to a collective bargaining agreement that provides for grievance and arbitration procedures for settling disputes and sets forth circumstances under which union members can be subjected to drug testing. *See* Agreement between the City of Hartford Connecticut and the Hartford Police Union, Mem. in Supp. of Def.'s Mot. to Dismiss (Dkt. No. 69), Ex. A. Therefore, he cannot allege he was deprived of a property right to continue in employment without due process without first exhausting those grievance and arbitration reme-

dies available to him. Russo responds that he is not required to exhaust administrative remedies in this case because he has brought a contemporaneous claim against the Hartford Police Union alleging breach of duty of fair representation.

Generally, a plaintiff in a section 1983 case is not required to exhaust his or her administrative remedies before bringing suit. *Patsy v. Board of Regents of Florida,* 457 U.S. 496, 515, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982). However, the *Patsy* holding does not apply in a procedural due process suit if the plaintiff failed to avail himself or herself of the right to be heard, which is the very right being asserted. *Narumanchi v. Bd. of Trustees of Conn. State Univ.,* 850 F.2d 70, 72 (2d Cir.1988) (affirming the dismissal of a tenured teacher's Fourteenth Amendment procedural due process claim because the teacher failed to submit to his union's grievance procedures, as set forth in a collective bargaining agreement, after he was suspended without pay); *Aronson v. Hall,* 707 F.2d 693, 694 (2d Cir.1983) (per curiam) (affirming a district court's dismissal of a plaintiff's procedural due process claim because "[h]aving chosen not to pursue available administrative review, [plaintiff] is hardly in a position to claim that such review denied him due process").

In this case, Russo is claiming that his right to due process was violated because he was suspended from his work assignment without due process. Russo does not dispute that he was subject to the agreement between the City of Hartford and the Hartford Police Union. Agreement between the City of Hartford Connecticut and the Hartford Police Union, Mem. in Supp. of Def.'s Mot. to Dismiss (Dkt. No. 69), Ex. A. The agreement provides a specific grievance procedure for "[a]ny grievance or dispute which may arise between the parties...." *Id.* at 6. However, there

is no allegation in the complaint in this case that Russo attempted to use the grievance procedures available through the collective bargaining agreement. Thus, he failed to avail himself of the right to be heard, which he is now claiming was violated.

Russo argues that, because he has filed a claim against the Hartford Police Union, alleging, *inter alia,* the Union, in cooperation with the Hartford Police Department, violated his procedural due process rights by refusing to challenge Russo's suspension, exhaustion is not required for jurisdiction. Second Amended Complaint (3:00cv1794) (Dkt. No. 96) at 17–21; *see Vaca v. Sipes,* 386 U.S. 171, 185, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967); 8 James Wm. Moore et al., Moore's Federal Practice § 42.13[4][a] (3d ed. 2001). The cases that Russo relies on, however, involve breach of contract claims, not § 1983 claims. *Vaca,* 386 U.S. at 185, 87 S.Ct. 903 (holding that where the union "has sole power under the contract to invoke the higher stages of the grievance procedure, and ... the employee-plaintiff has been prevented from exhausting his contractual remedies by the union's wrongful refusal to process the grievance," the employee may seek judicial enforcement of his contractual rights.).

Further, Russo asks the court to rely on a separately filed action to establish jurisdiction in this case. The present action, *Russo v. City of Hartford,* was filed on November 10, 1997. It does not name the union as a defendant, nor does it make any allegations about the collective bargaining agreement. The action against the union, *Russo v. Bailey,* was filed on September 20, 2000. The actions have separate complaints with different factual and legal allegations. Although the court has consolidated these two actions and a third action, "consolidation ... does not merge the suits into a single cause, or change the rights of the parties, or make those who are parties in one suit parties in another." *Johnson v. Manhattan R. Co.,* 289 U.S. 479, 496–97, 53 S.Ct. 721, 77 L.Ed. 1331 (1933). Thus, while a consolidation order may result in a single unit of litigation, such an order does not create a single case for jurisdiction purposes. *See Cella v. Togum Constructeur Ensemleier en Industrie Alimentaire,* 173 F.3d 909, 912 (3d Cir.1999).

As stated above, Russo does not allege that he attempted to use the grievance procedures available through the collective bargaining agreement and, therefore, Russo has not availed himself of the right he now claims was violated. The court thus grants the motion to dismiss as to the procedural due process claim for lack of subject matter jurisdiction, without prejudice to replead if a factual and legal basis exists to do so.

### 3. Breach of Contract

■ The sixth count of Russo's complaint alleges a breach of contract claim. Croughwell and Flaherty argue that, because they are not parties to the collective bargaining agreement, they cannot be held liable for allegedly breaching the agreement. Russo responds that, although the complaint states that the collective bargaining agreement is between the Hartford Police Department and the Hartford Police Union, the agreement provides that the chief of police and other officers can act as designated representatives of the city in grievance proceedings. While discovery may demonstrate otherwise, drawing all inferences in Russo's favor, the court finds that Russo has not failed to state a breach of contract claim against Croughwell and Flaherty because the agreement may provide that either could be a representative for the city.

■ All defendants argue that the breach of contract claim should be dismissed for lack of subject matter jurisdiction because, as with his procedural due process claim, Russo has failed to exhaust his administrative remedies under the collective bargaining agreement. As the court found with regard to the procedural due process claim, Russo has not alleged in this action that he attempted to exhaust the grievance procedures in the collective bargaining agreement. *See Daley v. City of Hartford,* 215 Conn. 14, 23, 574 A.2d 194 (1990) (citing *Vaca,* 386 U.S. at 184, 87 S.Ct. 903). Therefore, he has not alleged a breach of duty of fair representation against the union and cannot rely on such an allegation to commence an action against the employer. *Vaca,* 386 U.S. at 184, 87 S.Ct. 903. The defendants' motion to dismiss the breach of contract claim in the sixth count of the complaint is granted, without prejudice to replead if a factual and legal basis exists to do so.

### 4. Intentional Infliction of Emotional Distress

■ The seventh count of the complaint alleges a claim for intentional infliction of emotional distress. Under Connecticut law, to establish a claim of intentional infliction of emotional distress, a plaintiff must plead and prove that (a) defendants intended to inflict emotional distress, or knew or should have known that emotional distress was a likely result of their conduct; (b) defendants' conduct was extreme and outrageous; (c) defendants' conduct caused the plaintiff's distress; and (d) the emotional distress sustained by the plaintiff was severe. *Appleton v. Bd. of Educ. of Town of Stonington,* 254 Conn. 205, 210, 757 A.2d 1059 (2000) (citing *Petyan v. Ellis,* 200 Conn. 243, 253, 510 A.2d 1337 (1986)).

The defendants argue that Russo has not alleged facts sufficient to demonstrate that the defendants' conduct was "extreme and outrageous." Russo responds that he has sufficiently plead a claim of intentional infliction of emotional distress as to Flaherty and Croughwell, but withdraws his claim as to the City of Hartford.

The standard in Connecticut to demonstrate extreme and outrageous conduct is stringent. *Huff v. West Haven Bd. of Educ.,* 10 F.Supp.2d 117, 122 (D.Conn. 1998). " '[E]xtreme and outrageous' conduct is defined as that which 'exceed[s] all bounds usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind.' " *Id.* (quoting *DeLaurentis v. New Haven,* 220 Conn. 225, 267, 597 A.2d 807 (1991)). Mere conclusory allegations are insufficient as a matter of law to support a cause of action for intentional infliction of emotional distress. *Id.* (citing *Ruffolo v. Oppenheimer & Co., Inc.,* 1991 WL 17857, at *2 (S.D.N.Y. Feb. 5, 1991.); *Melfi v. City of Danbury,* 1993 WL 360650, at *2 (Conn.Super.Ct. Sept. 8, 1993)).

■ In this case, Russo does not allege any facts in support of his intentional infliction of emotional distress claim. Russo refers the court to paragraphs 30–34 of his complaint to demonstrate that he has stated a claim for emotional distress. Mem. in Opp. to Mot. to Dismiss (Dkt. No. 106) at 14. The paragraphs referred to support Russo's invasion of privacy and First Amendment claims because they allege that Croughwell and Flaherty "set out on a course and conspiracy to destroy the character of Mr. Russo" and "disclosed confidential information." Complaint ¶¶ 30–31. Presumably, Russo claims that the alleged invasion of privacy is extreme and outrageous conduct in and of itself. However, his allegations at these paragraphs, without more, are insufficient to support an intentional infliction of emotional distress claim. *See Huff,* 10 F.Supp.2d at

122 (citing *Martin v. Citibank, N.A.*, 762 F.2d 212, 220 (2d Cir.1985) (construing "extreme and outrageous" under New York law); *Parsons v. United Technologies Corp., Sikorsky Aircraft Div., et al.*, 243 Conn. 66, 89, 700 A.2d 655 (1997) (plaintiff's conclusory allegations of wrongful, retaliatory discharge, without more, are insufficient to support a negligent infliction of emotional distress claim)). Even assuming all of the facts alleged in the paragraphs to which Russo refers are true, the court does not find that they establish behavior by the Flaherty or Croughwell that exceeds all bounds usually tolerated by decent society. Russo has not sufficiently pled extreme and outrageous conduct in support of his intentional infliction of emotional distress claim. Accordingly, the defendants' motion to dismiss Russo's claim of intentional infliction of emotional distress is granted, without prejudice to replead if a factual and legal basis exists to do so.

### 5. Second, Third, Eighth, and Ninth Counts of the Complaint Withdrawn

The court notes that Russo has withdrawn the negligence claim in the second count of his complaint, the assault and battery claim in the eighth count of his complaint, and the Americans with Disabilities Act claim in the ninth count of his complaint as to all defendants. Mem. in Opp. to Mot. to Dismiss (Dkt. No. 106) at 12, 14. In addition, Russo has withdrawn the third count of the complaint because it fails to state a cause of action. *Id.* at 12.

### C. *Russo v. Bailey, et al.* (3:00cv1794 (JCH))

This is a federal civil rights action brought by Russo under 42 U.S.C. § 1983 against state criminal prosecutors, state inspectors, Hartford police officers and supervisors, the City of Hartford, the Hartford Police Union, and officers of the Hartford Police Union. The complaint alleges several federal constitutional and state law violations. In the First Count of the Second Amended Complaint, Russo alleges violations of his rights under the Fourth Amendment to the U.S. Constitution, claiming that (1) the defendants illegally seized records of his prescription drug transactions from various pharmacies without a search warrant; (2) the defendants illegally arrested him without probable cause pursuant to a "falsified" warrant; and (3) the defendants maliciously prosecuted him for the charged state criminal offenses. In the Second Count of the Second Amended Complaint, Russo alleges that the same acts violated his rights to substantive due process, procedural due process, and equal protection under the Fourteenth Amendment to the U.S. Constitution. In the Third Count, Russo alleges that Chief Rudewicz violated his First and Fourteenth Amendment rights by failing to reinstate him after the criminal charges were dropped. In the Fourth Count, Russo alleges that various union officers and the Hartford Police Union violated his First and Fourteenth Amendment rights by failing to advocate on his behalf. In the Fifth Count, Russo alleges that the City of Hartford violated his constitutional rights because the acts of various police supervisors became the policy of the City. In the Sixth Count, Russo alleges he was falsely arrested by the defendants in violation of his rights under Connecticut common law. In the Seventh and Ninth Counts, Russo raises common law claims sounding in malicious prosecution and intentional infliction of emotional distress. In the Eighth Count, Russo alleges that the Hartford Police Union breached its duty of fair representation.

### 1. State Defendants [Dkt. No. 77]

Russo names several state prosecutors and inspectors in their individual and official capacities ("state defendants"). The state defendants include John Bailey, James Thomas, Herbert Carlson, Jr., Joan Alexander, Joseph Hammick, Lawrence Skinner, and Stephen Kumnick. The state defendants have moved to dismiss the counts of the complaint in which they are named, counts one, two, six, seven, and nine.

### a. Abstention

The state defendants argue that, under *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), the court should abstain from proceeding until the underlying state criminal charges against Russo are finally resolved. Russo responds that abstention is not appropriate because he is not asking the court to enjoin a state criminal proceeding and because, at the time this action was filed, the criminal charges against Russo had been dismissed.[4]

Because Congress, and not the judiciary, determines the scope of federal jurisdiction within constitutionally permissible bounds, a federal court has no authority to abstain from the exercise of jurisdiction that has been properly conferred. *New Orleans Public Service, Inc. v. Council of New Orleans*, 491 U.S. 350, 357–60, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989). This obligation to adjudicate claims within the federal courts' jurisdiction is "virtually unflagging." *Id.* at 359, 109 S.Ct. 2506 (citing *Deakins v. Monaghan*, 484 U.S. 193, 203, 108 S.Ct. 523, 98 L.Ed.2d 529 (1988)). However, because federal courts do have discretion in determining whether to grant certain types of relief, abstention is appro-

priate in a few carefully defined situations. *See id.* Abstention remains, however, "the exception, not the rule. 'The doctrine of abstention ... is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it....'" *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976) (quoting *County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188, 79 S.Ct. 1060, 3 L.Ed.2d 1163 (1959)). Therefore, "[a]bstention rarely should be invoked." *Ankenbrandt v. Richards*, 504 U.S. 689, 705, 112 S.Ct. 2206, 119 L.Ed.2d 468 (1992).

*Younger* abstention arose primarily from "the notion of 'comity,' that is, a proper respect for state functions ... and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways." *Younger*, 401 U.S. at 44, 91 S.Ct. 746. Thus, *Younger* abstention reflects "a strong federal policy against federal-court interference with pending state judicial proceedings absent extraordinary circumstances." *Middlesex County Ethics Committee v. Garden State Bar Ass'n*, 457 U.S. 423, 431, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982). Abstention under *Younger* is appropriate only where: (1) there are ongoing state proceedings that are judicial in nature; (2) the state proceedings implicate important state interests; and (3) the state proceedings afford an adequate opportunity to raise the federal claims. *Id.* at 432, 102 S.Ct. 2515; *CECOS Int'l, Inc. v. Jorling*, 895 F.2d 66, 70 (2d Cir.1990). Even in the presence of the necessary predicates for *Younger* abstention, abstention is not

---

4. On September 21, 2000, the day after the original complaint in this action was filed, the State of Connecticut appealed the Connecti-

cut Superior Court's decision granting Russo's motion to suppress in the state criminal case.

appropriate if the state proceedings are being undertaken in bad faith, or if there are other extraordinary circumstances, such as where the state proceedings are based on a flagrantly unconstitutional statute. *Middlesex*, 457 U.S. at 435, 102 S.Ct. 2515.

■■■ As an initial matter, the court finds that the first two prongs necessary for *Younger* abstention are met. First, the criminal proceeding was pending when Russo filed the present action. *Huffman v. Pursue*, 420 U.S. 592, 613, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975) (holding that state court proceedings are "pending" within the meaning of *Younger* not only while they are before state trial courts, but also over the course of direct review within the state court system). Second, an ongoing prosecution implicates important state interests. *Davis v. Lansing*, 851 F.2d 72, 76 (1988); *see also Middlesex*, 457 U.S. at 432, 102 S.Ct. 2515.

The issue is thus whether Russo has an avenue open for review of his constitutional claims in state court and, if he does, whether other extraordinary circumstances warrant federal court jurisdiction regardless. Russo seeks both injunctive relief and money damages for alleged § 1983 violations. While the Second Amended Complaint seeks injunctive relief, it does not specify the type of injunction sought. In his Memorandum in Opposition to City Defendants' Motion to Dismiss, Russo states that he "is not seeking an injunction which would prevent the state from prosecuting the Plaintiff following the State Supreme Court's resolution of the appeal." Mem. in Opp. to City Def.'s Mot. to Dismiss (Dkt. No. 86) at 8. However, Russo does not indicate what specific injunctive relief is sought. *Younger* abstention is required "unless it plainly appears that the federal claims cannot be determined in the state proceeding." *Kirschner v. Klemons*,

225 F.3d 227, 235 (2d Cir.2000) (internal quotations omitted) (citing *Middlesex*, 457 U.S. at 435, 102 S.Ct. 2515 (implying that would-be federal plaintiff facing *Younger* doctrine bears burden of demonstrating that the claim cannot be adjudicated in the state proceeding)). Because the court cannot find that it plainly appears that the federal claims cannot be determined in the state proceeding, *Younger* abstention applies. Russo does not argue that there are extraordinary circumstances in this case to overcome *Younger* abstention. Therefore, the court grants the state defendants' motion to dismiss the § 1983 claims for injunctive relief, without prejudice to replead if a factual and legal basis exists to do so.

■■■ Russo's claims for damages require a separate analysis. The Second Circuit has held that "[w]hen money damages, as opposed to equitable relief, are sought, it is less likely that unacceptable interference with the ongoing state proceeding, the evil against which *Younger* seeks to guard, would result from the federal court's exercise of jurisdiction." *Kirschner v. Klemons*, 225 F.3d 227, 238 (2d Cir. 2000). Accordingly, "abstention and dismissal are inappropriate when damages are sought, even when a pending state proceeding raises identical issues and we would dismiss otherwise identical claims for declaratory and injunctive relief, but . . . a stay of the action pending resolution of the state proceeding may be appropriate." *Id.* (citing *Giulini v. Blessing*, 654 F.2d 189, 192–94 (2d Cir.1981)); *accord Rivers v. McLeod*, 252 F.3d 99, 101 (2d Cir.2001) (holding that principles of abstention under *Younger* did not bar the district court from considering the plaintiff's claim because application of the *Younger* doctrine is inappropriate where the litigant seeks money damages for an

alleged violation of § 1983).[5] The court thus finds that *Younger* abstention is not appropriate with respect to Russo's claims for money damages under § 1983.

 In addition, the court does not find it necessary to stay the present case pending the outcome of the appeal in the state criminal case. The decision as to whether to stay a federal action on the ground that there is a related action pending in a state court is committed to the sound discretion of the district court. *United States v. Pikna*, 880 F.2d 1578, 1582 (2d Cir.1989) (citing *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)); *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). "In determining whether or not to grant such a stay, the district court should consider such factors as (1) whether the controversy involved a *res* over which one of the courts has assumed jurisdiction, (2) whether one forum is more inconvenient than the other for the parties, (3) whether staying the federal action will avoid piecemeal litigation, (4) whether one action is significantly more advanced than the other, (5) whether federal or state law provides the rule of decision, and (6) whether the federal plaintiff's rights will be protected in the state proceeding." *Id.* No one factor is determinative, and the weight to be given to each may vary substantially from case to case. Further, the presumption in favor of exercising jurisdiction dictates that "the facial neutrality of a factor is a basis for retaining jurisdiction, not for yielding it." *Woodford v. Community Ac-*

*tion Agency of Greene County, Inc.*, 239 F.3d 517, 522 (2d Cir.2001).

Considering the issues raised in this federal case and the state criminal case, the court concludes the federal action should not be stayed at this time pending the outcome of the state appeal. With regard to the six *Pikna* factors, only numbers three, five, and six have any real bearing on the instant motion. With regard to the third factor, the issue of whether the pharmaceutical records were illegally seized is one of many issues in the federal case. Therefore, staying the federal proceeding will not avoid piecemeal litigation because this court would still need to hear the remaining issues. With regard to the fifth factor, federal law controls the decision in the federal case as the issue raises federal constitutional questions. While the state appeal may involve state rules of evidence, such issues do not bear on the federal case. Finally, with regard to the sixth factor, as the court has already noted, the state criminal appeal does not protect Russo's federal right to obtain money damages for a Section 1983 claim. Therefore, because the factors weigh in favor of maintaining jurisdiction, the court denies the state defendants' request to stay the federal proceeding pending the outcome of the state criminal case.

### b. Immunity from Liability in Official Capacities

The state defendants argue that, under the Eleventh Amendment to the U.S. Constitution, the court lacks subject matter jurisdiction over any claims for money damages brought against them in their official capacities. Russo indicates in his

---

**5.** The Supreme Court has declined to reach the issue whether *Younger* applies to claims for money damages, but has noted that, even if it does, the federal suit should be stayed, rather than dismissed, if the money damages sought could not be obtained in the pending state proceeding, even if the money damages sought could be obtained in a separate state proceeding. *Deakins v. Monaghan*, 484 U.S. 193, 201–03, 108 S.Ct. 523, 98 L.Ed.2d 529 (1988).

memorandum in opposition that he withdraws all claims against the state defendants for actions taken in their official capacities. Mem. in Opp. to City Def.'s Mot. to Dismiss (Dkt. No. 86) at 9. Therefore, the motion to dismiss on this ground is denied as moot.

### c. Absolute Prosecutorial Immunity

The state prosecutorial defendants, Bailey, Thomas, Carlson, Jr., and Alexander, argue that they are entitled to absolute prosecutorial immunity. Russo responds that the state prosecutorial defendants are not entitled to absolute immunity because they were engaged in administrative or investigatory functions when they committed the alleged acts.

■■■ A prosecutor is absolutely immune from claims for damages arising out of prosecutorial duties that are " 'intimately associated with the judicial phase of the criminal process.' " *Kalina v. Fletcher*, 522 U.S. 118, 125, 118 S.Ct. 502, 139 L.Ed.2d 471 (1997) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976)). " 'The granting or denial of absolute immunity depends more ... on the function being performed than on the office of the defendant, and the absolute immunity accorded a prosecuting attorney is extended only so far as is necessary to the effective functioning of the judicial process.' " *Day v. Morgenthau*, 909 F.2d 75, 77 (1990) (quoting *Robison v. Via*, 821 F.2d 913, 918 (2d Cir.1987)). Prosecutors surrender their absolute immunity when they assume responsibility for directing police investigations. *Burns v. Reed*, 500 U.S. 478, 495, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991). "When a prosecutor is engaged in administrative or investigative activities, he is entitled only to qualified immunity, which requires a showing that his acts were objectively reasonable." *Day*, 909 F.2d at 77.

■■■ Russo has alleged that the state prosecutorial defendants violated his constitutional rights while performing investigative functions. Russo alleges that Skinner, Alexander, Thomas, Carlson, and Hammick met with investigators and that "[d]efendant Thomas decided to have the plaintiff arrested without probable cause and approved the warrant." Second Amended Complaint (Dkt. No. 96) at 9 ¶ 41. Russo further alleges that "members of the HPD and State's Attorney's Office ... continued to pursue the illegal criminal investigation of the Plaintiff" and that "[t]he Hartford State's Attorney's Office continued to receive information regarding the criminal investigation of the Plaintiff from the DEA and the HPD." *Id.* at 9 ¶¶ 44, 46. Russo has thus plead that the prosecutorial defendants were engaged in investigative activities. While the distinction between prosecutorial and investigative activities can be a difficult one to make and further evidence may demonstrate that some, if not all, of the state prosecutorial defendants engaged only in prosecutorial activities, the court finds Russo's allegations sufficient to survive the motion to dismiss. The court therefore denies the motion to dismiss on absolute immunity grounds without prejudice to renew the affirmative defense should the facts support it.

### d. Second Count: Fourteenth Amendment Due Process Claims

In the Second Count of the Second Amended Complaint, Russo alleges that the state and police defendants violated the Fourteenth Amendment to the U.S. Constitution by violating his substantive due process rights, his procedural due process rights, his property rights in employment, and his right to equal protection of the laws. The state defendants argue that Russo fails to state a claim under the

Fourteenth Amendment's Due Process Clause because his claims are for false arrest and malicious prosecution, which must be adjudicated under the Fourth Amendment. Russo does not dispute the state defendants' argument as to any of the Fourteenth Amendment claims.

■■■ With regard to the substantive due process claim, "[w]here a particular amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.' " *Albright v. Oliver*, 510 U.S. 266, 273, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)). The right not to be arrested or prosecuted without probable cause has long been a clearly established constitutional right cognizable under the explicit language of the Fourth Amendment. *Gerstein v. Pugh*, 420 U.S. 103, 114, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975); *Brown v. D'Amico*, 35 F.3d 97, 99 (2d Cir.1994). Therefore, the motion to dismiss the substantive due process claim is granted, without prejudice to replead if a factual and legal basis exists to do so.

■■■ With regard to the procedural due process claim, the state defendants argue that Russo has not made a specific allegation as to the sort of process to which he was entitled or how such as entitlement was denied him. Absent the benefit of any argument from Russo, the court agrees. Russo's procedural due process claim and his claim that he was denied a property right are nothing more than "bald assertions and conclusions of law[, which] will not suffice to state a claim." *Tarshis v. Riese Org.*, 211 F.3d 30, 35 (2d Cir.2000) (citations omitted). A complaint "must contain either direct or inferential allegations respecting the material elements necessary to sustain a recovery under some viable legal theory." *Telectronics Proprietary, Ltd. v. Medtronic, Inc.*, 687 F.Supp. 832, 836 (S.D.N.Y.1988). Because the complaint fails to state allegations respecting the material elements of a procedural due process claim, the state defendants' motion to dismiss such claims is granted, without prejudice to replead if a factual and legal basis exists to do so.

■■■ Similarly, with regard to the equal protection claim, the complaint does not contain allegations sufficient to support an equal protection action. The Equal Protection Clause of the Fourteenth Amendment directs that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const.Amend. XIV, § 1. "The equal protection clause directs state actors to treat similarly situated people alike." *Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir.1995) (citing *Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985)). Successful equal protection claims may be brought by a "class of one," where the plaintiff alleges that he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564–65, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000) (citing *Sioux City Bridge Co. v. Dakota County*, 260 U.S. 441, 43 S.Ct. 190, 67 L.Ed. 340 (1923); *Allegheny Pittsburgh Coal Co. v. Comm'n of Webster Cty.*, 488 U.S. 336, 109 S.Ct. 633, 102 L.Ed.2d 688 (1989)). However, Russo does not allege that the state defendants treated him differently than others who were similarly situated, nor does Russo allege any other basis for an equal protection claim. *See, e.g., Pyke v. Cuomo*, 258 F.3d 107, 110 (2d Cir.2001) ("a plaintiff who ... alleges an express racial classification, or alleges that

a facially neutral law or policy has been applied in an intentionally discriminatory race-based manner, or that a facially neutral statute or policy with an adverse effect was motivated by discriminatory animus, is not obligated to show a better treated, similarly situated group . . . ."). Therefore, Russo has failed to state an equal protection claim and the state defendants' motion to dismiss on such grounds is granted, without prejudice to replead if a factual and legal basis exists to do so.

### e. Qualified Immunity

▮ The state defendants argue that they are entitled to qualified immunity on the first count of the complaint for damages in performance of discretionary official functions, including the alleged search and seizure of Russo's pharmaceutical records. "Qualified immunity is 'an entitlement not to stand trial or face the other burdens of litigation.' " *Saucier v. Katz,* — U.S. ——, 121 S.Ct. 2151, 2155, 150 L.Ed.2d 272 (2001) (quoting *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985)). Because the privilege is effectively lost if a case is erroneously permitted to go to trial, "[w]here the defendant seeks qualified immunity, a ruling on that issue should be made early in the proceedings . . . ." *Id.*

In analyzing a claim of qualified immunity, the court must first consider whether, "[t]aken in the light most favorable to the party asserting the injury, . . . the facts alleged show the . . . conduct violated a constitutional right[.]" *Id.* (citing *Siegert v. Gilley,* 500 U.S. 226, 232, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991)). If the court finds that a constitutional right would have been violated were the allegations established, the court then considers "whether the right was clearly established." *Id.* This inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Id.* "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable [state official] that his conduct was unlawful in the situation he confronted." *Id.* at 2156; *see also Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).

The state defendants argue that Russo has not alleged facts that show they violated Russo's constitutional right because Russo cannot demonstrate that he exhibited an actual subjective expectation of privacy in the area searched, and that his subjective expectation was one that society is willing to accept as reasonable. *United States v. Fields,* 113 F.3d 313, 320 (2d Cir.1997). Under Connecticut General Statutes § 21a–265, federal, state, county, and municipal officers may inspect prescriptions, orders, and records but may only divulge knowledge of any prescription in connection with a civil action or criminal prosecution in court or before a licensing or registration board or officer. Conn.Gen. Stat. § 21a–265. Because of the statute, the state defendants argue, Russo did not have a reasonable expectation of privacy and, therefore, he cannot demonstrate a constitutional violation. The state defendants further argue that, even if Russo had a reasonable expectation of privacy in the records and, if proven, the alleged actions of the defendants would violate such an expectation, the state defendants reasonably relied on § 21a–265 in inspecting the records and are, therefore, entitled to qualified immunity.

Russo responds that, because a state court found that the search and seizure of his records was illegal, a constitutional violation occurred. Further, Russo argues that the defendants' actions demonstrate they knowingly sought to circumvent Russo's constitutional rights through the guise of administrative procedures and thus the

defendants are not entitled to qualified immunity. Russo's argument ignores the concern of the immunity inquiry that, even if a constitutional violation occurs, if the officer's mistake as to what the law required was reasonable, the officer is still entitled to the immunity defense. Thus, even though the state court suppressed evidence obtained from the pharmacies in the state criminal case against Russo, the state defendants are still entitled to qualified immunity from civil suit if the right was not clearly established, that is, if it would not have been clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *Saucier,* 121 S.Ct. at 2156.

Russo has alleged facts that, if proven, would establish a constitutional violation of a clearly established right to be free from unreasonable search and seizure because he has alleged that the defendants initiated a criminal investigation of Russo, "under the ruse of investigating [his] physician." Second Amended Complaint (Dkt. No. 96) at 6 ¶ 28. Thus, Russo has alleged that the defendants pursued the criminal search and seizure of the records under the guise of an administrative inspection, which, if proven, would establish a constitutional violation.

Russo makes no allegation, however, regarding the state defendants' involvement in the search and seizure of his pharmaceutical records. The Second Amended Complaint alleges that defendant Kenary, a Hartford Police Captain, contacted the DEA to initiate the criminal investigation of Russo under the ruse of investigating Russo's physician. Second Amended Complaint (Dkt. No. 86) at 6 ¶ 28. It further alleges that Kenary, Flaherty, and Hajdasz, all members of the Hartford Police Department, seized the pharmaceutical records. *Id.* at 7 ¶ 35. The only allegation regarding the state defendants' involve-

ment with the records states that some of the state defendants relied on the records to issue an arrest warrant for Russo. Russo does not allege that these defendants had any knowledge of the circumstances under which the records were obtained. Even if they had such knowledge, the court finds that the state defendants' reliance on the records was objectively reasonable in light of Conn.Gen.Stat. § 21a-265. The state defendants' motion to dismiss the first count of the complaint for qualified immunity is thus granted, without prejudice to replead if there is a factual and legal basis to do so.

### f. Sovereign Immunity and Conn.Gen. Stat. § 4–165

The state defendants argue that they are entitled to sovereign immunity on the pendent state law claims brought against them in their official capacities and are entitled to immunity from suit under Conn.Gen.Stat. § 4–165 for the state law claims brought against them in their individual capacities. Russo has withdrawn all claims brought against the state defendants for actions taken in their official capacities. Mem. in Opp. To City Def.'s Mot. to Dismiss (Dkt. No. 86) at 9. Therefore, the state law claims are brought against the state defendants in their individual capacities only.

Connecticut General Statutes § 4–165 provides in pertinent part: "[n]o state officer or employee shall be personally liable for damage or injury, not wanton, reckless or malicious, caused in the discharge of his duties or within the scope of his employment." Conn.Gen.Stat. § 4–165. The state defendants argue that Russo has not alleged that the defendants acted in a "wanton, reckless or malicious" manner sufficient to carry their actions outside the scope of the statutory immunity provided by § 4–165.

In order to establish that the defendants' conduct was wanton, reckless, wilful, intentional and malicious, the plaintiff must prove, on the part of the defendants, the existence of a state of consciousness with reference to the consequences of one's acts.... [Such conduct] is more than negligence, more than gross negligence.... [I]n order to infer it, there must be something more than a failure to exercise a reasonable degree of watchfulness to avoid danger to others or to take reasonable precautions to avoid injury to them.... It is such conduct as indicates a reckless disregard of the just rights or safety of others or of the consequences of the action.... [In sum, such] conduct tends to take on the aspect of highly unreasonable conduct, involving an extreme departure from ordinary care, in a situation where a high degree of danger is apparent....

*Shay v. Rossi*, 253 Conn. 134, 181, 749 A.2d 1147 (2000) (quoting *Dubay v. Irish*, 207 Conn. 518, 532–33, 542 A.2d 711 (1988) (internal quotation marks omitted)). The complaint in this case does not allege a " 'state of consciousness regarding the consequences of the [state] defendants' actions.' " *Carroll v. Killingly*, 2000 WL 1682541, at *4 (Conn.Super. Oct. 10, 2000) (quoting *Shay*, 253 Conn. at 182, 749 A.2d 1147). The Second Amended Complaint alleges that (1) Kumnick and Bailey notified others of the FBI probe; (2) Bailey sent Croughwell a memo detailing Russo's conversation with Kumnick; (3) several of the state defendants met with the DEA and members of the Hartford Police Department before issuing an arrest warrant for Russo; (4) the state defendants pursued an illegal criminal investigation of Russo; and (5) the state defendants continued to receive information regarding the investigation after the case was transferred. The complaint does not allege that the state defendants intended to injure Russo or had improper or self-serving motives. *See Shay*, 253 Conn. at 174, 749 A.2d 1147; *Antinerella v. Rioux*, 229 Conn. 479, 497, 642 A.2d 699 (1994). The court therefore finds that Conn.Gen.Stat. § 4–165 applies and the state defendants are immune from liability under Connecticut state law for actions taken in their individual capacities. The state defendants' motion to dismiss the state law claims in the sixth, seventh, and ninth counts against them is thus granted, without prejudice to replead if there is a factual and legal basis to do so.

The state defendants' motion to dismiss each of the counts of the Second Amended complaint in which they are named, counts one, two, six, seven, and nine is thus granted.[6]

### 2. Police Defendants [Dkt. No. 81]

Russo names several members of the Hartford Police Department in his complaint. The police defendants include Joseph Croughwell, Jeffrey Flaherty, David Kenary, Daryl Roberts, Christopher Lyons, Robert Lawlor, James Rovella, Charles Lilley, and Robert Rudewicz. The

---

**6.** If Russo decides to replead his allegations against the state defendants, the court directs Russo to specifically allege how each of the state prosecutorial defendants were engaged in investigative rather than prosecutorial functions. In light of the court's ruling dismissing the counts in which the state prosecutorial defendants are named on qualified immunity and other grounds, the court does not direct Russo to replead these allegations at this time. However, the court is concerned about the quality of the pleadings regarding the state prosecutorial defendants in relation to their prosecutorial immunity. Therefore, if the complaint is amended to cure the deficiencies identified by the court in dismissing the counts against the state prosecutorial defendants, it should also specify the alleged investigative functions performed by each of the prosecutorial defendants.

police defendants have moved to dismiss Counts One, Two, and Three of Russo's Second Amended Complaint as those counts apply to them.

### a. Qualified Immunity

█ The police defendants adopt the arguments of the state defendants in alleging that they are entitled to qualified immunity from the allegations in Count One of the Second Amended Complaint that they violated Russo's Fourth Amendment rights to be free from unreasonable searches and seizures. Russo similarly adopts the response he made to the state defendants' motion to dismiss on qualified immunity grounds.

Unlike the allegations regarding the state defendants, the Second Amended Complaint alleges that the police defendants were involved in the search and seizure of the records. Such allegations are sufficient to establish a claim that the police defendants violated Russo's clearly established Fourth Amendment rights and were not objectively reasonable in committing such violations. The Second Amended Complaint alleges that defendant Kenary, a lieutenant in the Hartford Police Department, contacted the DEA to initiate a criminal investigation of Russo, "under the ruse of investigating Plaintiff's physician." Second Amended Complaint (Dkt. No. 86) at 6 ¶ 28. The complaint further alleges that the criminal investigation was initiated in retaliation for Russo's assistance with the federal investigation of the Hartford Police Department. *Id.* at 6–9. Taken in the light most favorable to Russo, Russo has alleged that the defendants were knowingly involved in a staged investigation of Russo's physician in order to investigate Russo's records. If proven, such a mistake would not be objectively reasonable, and the defendants would not be entitled to qualified immunity for the un-

constitutional search and seizure of Russo's records. The court thus denies the police defendants' motion to dismiss the first count of the complaint on qualified immunity grounds.

The court notes, however, that, because the complaint does not specify each police defendant's role in the search and seizure of records, further facts may demonstrate that some or all of the police defendants were objectively reasonable and are entitled to qualified immunity. The court therefore denies the motion without prejudice to renew the qualified immunity argument should discovery uncover further facts tending to prove the defendants are entitled to such a defense.

### b. Fourteenth Amendment Due Process Claims

The police defendants adopt the arguments of the state defendants regarding the due process claims made in the Second Count of the Second Amended Complaint. Russo does not dispute the defendants' arguments. For the reasons discussed above, the court finds that Russo has failed to state a substantive or procedural due process or equal protection claim against the police defendants in the Second Count of his complaint. For the same reasons, the court further finds that Russo has failed to state an equal protection claim against Rudewicz in the Third Count of the Second Amended Complaint. The court grants the police defendants motion to dismiss the Second Count and the equal protection claim in the Third Count of the Second Amended Complaint with regard to the police defendants, without prejudice to replead such counts if a factual and legal basis exists to do so.

### c. Due Process Claim Against Defendant Rudewicz

The police defendants argue that the due process claim against Rudewicz in the

Third Count of the Second Amended Complaint should be dismissed because Russo failed to exhaust his administrative remedies under the Collective Bargaining Agreement and, therefore, the court lacks subject matter jurisdiction. Russo responds that he does not need to exhaust his administrative remedies because his claims against Rudewicz are not based on a violation of the collective bargaining agreement but on constitutional violations detailed in the complaint. As discussed above, however, Russo has not made a specific allegation as to the sort of process to which he was entitled or how such as entitlement was denied him. To the court's knowledge, the only process available to Russo to protect his position is the grievance procedure in the Collective Bargaining Agreement. If Russo is not challenging this procedure, then he has failed to allege facts sufficient to support a procedural due process claim. The court therefore grants the police defendants' motion to dismiss the Third Count of the Second Amended Complaint.

### 3. City of Hartford [Dkt. Nos. 83, 70] [7]

In the Fifth Count of the Second Amended Complaint, Russo alleges that the City of Hartford violated his constitutional rights by failing to promulgate and enforce policies regarding personnel actions and discipline of officers, failing to supervise Russo's supervisors in the performance of their duties, and failing to take appropriate action against such supervisors when Russo complained. The City of Hartford moves to dismiss the

Fifth Count of the Second Amended Complaint because it fails to state a claim upon which relief can be granted and because the court should abstain from proceeding in this case until the underlying criminal matter is finally resolved.[8]

#### a. Failure to State a Claim

In both its motion to dismiss the Amended Complaint [Dkt. No. 70] and its motion to dismiss the Second Amended Complaint [Dkt. No. 83], the City argues, as it does in the *Russo v. City of Hartford* case, that Russo fails to state a claim under § 1983 because he fails to allege that a City of Hartford policy or custom caused his alleged constitutional harm.

As discussed above, in order for a municipality to be liable under § 1983, a plaintiff is required to plead and prove the existence of an official policy or custom that causes the plaintiff to be subjected to a denial of a constitutional right. *Zahra v. Town of Southold,* 48 F.3d 674, 685 (2d Cir.1995). However, "an 'official policy' within the meaning of *Monell* [can] be inferred from informal acts or omissions of supervisory municipal officials," *Turpin v. Mailet,* 619 F.2d 196, 200 (2d Cir.1980), and a single decision by "municipal policy makers" can be sufficient to impose liability. *Pembaur v. City of Cincinnati,* 475 U.S. 469, 480, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986).

As the court found in the *Russo v. City of Hartford* case, Russo has stated a § 1983 claim against the City in this case. Russo alleges that Croughwell was the Chief of Police for the Hartford Police

---

**7.** The City filed a motion to dismiss [Dkt. No. 70] Russo's Amended Complaint and filed a subsequent motion to dismiss [Dkt. No. 83] when Russo filed a Second Amended Complaint.

**8.** Although Russo did not file a brief in opposition to the City's motion to dismiss in this

case, the court considers the arguments made by Russo in response to the City's motion to dismiss filed in *Russo v. City of Hartford* and to other parties' motions to dismiss filed in this case as those memoranda address the same arguments made by the City in the present motion.

Department during the times material to the complaint and that his actions became the custom, decisions, and policy of the City of Hartford. Drawing all inferences in Russo's favor, the court finds that Russo could establish that Croughwell was the municipal policy maker with regard to alleged constitutional deprivations. The court therefore denies the City's motion to dismiss for failure to state a claim.[9]

### b. Failure to Exhaust

The City additionally argues in its motion to dismiss the Second Amended Complaint [Dkt. No. 83] that, to the extent Russo brings a cause of action which is either based on breach of or dependent upon the terms of a collective bargaining agreement, he has failed to exhaust his administrative remedies and the court lacks jurisdiction. As stated above, generally, a plaintiff in a section 1983 case is not required to exhaust his or her administrative remedies before bringing suit. *Patsy v. Board of Regents of Florida*, 457 U.S. 496, 515, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982). However, the *Patsy* holding does not apply in a procedural due process suit if the plaintiff failed to avail himself or herself of the right to be heard, which is the very right being asserted. *Narumanchi v. Bd. of Trustees of Conn. State Univ.*, 850 F.2d 70, 72 (2d Cir.1988); *Aronson v. Hall*, 707 F.2d 693, 694 (2d Cir.1983) (per curium). Therefore, the City's exhaustion

argument could only apply to a procedural due process claim. Russo does not allege a procedural due process claim in the Fifth Count of the Second Amended Complaint.[10] Therefore, the court denies the City's motion to dismiss for lack of subject matter jurisdiction.

### c. Abstention

In its motion to dismiss the Second Amended Complaint [Dkt. No. 83], the City adopts the abstention argument made by the state defendants. For the reasons discussed above, the court grants the motion to dismiss on abstention grounds as to any claims for injunctive relief, but denies the motion as to any claims for money damages.

### 4. Union Defendants [Dkt. No. 74]

In the Second Amended Complaint, Russo alleges that: (1) the Hartford Police Union, as well as Lawrence Reynolds, Michael Wood, and Thomas Hardwick, officers of the Union, violated Russo's constitutional rights pursuant to 42 U.S.C. § 1983; (2) the Union breached its duty of fair representation to Russo; and (3) the Union officers violated state common law principles of intentional infliction of emotional distress. The union defendants have filed a motion to dismiss the constitutional claims for failure to state a claim and the breach of duty claim for lack of subject matter jurisdiction.[11]

---

**9.** As this was the only argument made in the City's motion to dismiss the Amended Complaint, that motion to dismiss [Dkt. No. 70] is denied.

**10.** The court notes that it is not clear what constitutional violations are alleged in the Fifth Count. The Fifth Count is described as "[v]iolation of 42 U.S.C. § 1983 as to the City of Hartford." Second Amended Complaint (Dkt. No. 86) at 21. However, § 1983 alone does not confer rights but creates a cause of action for violation of federal constitutional

rights. 42 U.S.C. § 1983. Russo does not specify which rights he is alleging the City violated. Neither the allegations in the Fifth Count or the facts used to support those allegations refers to process due under the Collective Bargaining Agreement or otherwise states a claim for a violation of Russo's procedural due process rights.

**11.** The union defendants filed their motion to dismiss in response to Russo's Amended Complaint [Dkt. No. 41]. The Second Amended Complaint contains largely the same allega-

■ First, the union defendants argue that Russo has failed to state a claim against them under § 1983. To the extent that Russo alleges that the union defendants violated Russo's rights by failing to advocate on his behalf, the court finds that Russo has failed to state a claim. Russo has not alleged that the union defendants were acting under the color of state law, as required by 42 U.S.C. § 1983. However, the court finds that Russo has cured the deficiency identified by the union defendants in the Amended Complaint, in which Russo did not allege an agreement between the police defendants and the union defendants. Russo states a claim for conspiracy under § 1983 in the Second Amended Complaint because he alleges that the inaction of the union defendants "was in furtherance of an implicit agreement between the Hartford Police Department Defendants and the Union Defendants to prevent Plaintiff's return to duty." Second Amended Complaint (Dkt. No. 96) at 19, ¶ 15.

■ The union defendants argue that the court lacks subject matter jurisdiction over Russo's breach of fair representation claim because Russo failed to exhaust his administrative remedies available under the collective bargaining agreement. Russo responds that the court should not require him to exhaust intra-union remedies prior to bringing suit against the union because doing so would be unreasonable and futile.

"[T]here exists an important exception to the requirement that the employee exhaust his contractual remedies. An employee may escape a defense based on his failure to exhaust, as well as avoid the exclusive nature of the contract remedies, 'provided the employee can prove that the union as bargaining agent breached its duty of fair representation in its handling of the employee's grievance.' " *Johnson v. General Motors*, 641 F.2d 1075, 1085 (2d Cir.1981) (quoting *Vaca v. Sipes*, 386 U.S. 171, 186, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967)). The court finds that Russo has alleged that the union breached its duty of fair representation in its handling of his grievance. The court therefore denies the motion to dismiss the Eighth Count in the Second Amended Complaint for lack of subject matter jurisdiction. The motion is denied without prejudice to renew if appropriate.

### D. *Russo v. Marquis, et al.* (3:00cv2382 (JCH))

In this action, Russo alleges that the City of Hartford and Bruce Marquis, the Hartford Chief of Police, violated Russo's right to redress without retaliation under the First Amendment to the U.S. Constitution and his rights to equal protection, substantive due process, and procedural due process under the Fourteenth Amendment to the U.S. Constitution. The complaint further alleges that the defendants intentionally discriminated against him in violation of the Americans with Disabilities Act ("ADA") and the Connecticut Fair Employment Practices Act ("CFEPA").

---

tions against the union defendants. The Fifth Count of the Amended Complaint is the Fourth Count in the Second Amended Complaint, which alleges that the union defendants violated Russo's civil and due process rights by refusing to act on his behalf and collaborated with the police defendants to violate Russo's rights. Second Amended Complaint (Dkt. No. 96) at 17. The Sixth Count of the Amended Complaint is the Eighth Count of the Second Amended Complaint, which alleges that the union breached its duty of fair representation. *Id.* at 24. The court will address the arguments made in the union defendants' motion to dismiss the Amended Complaint to the extent that the claims as now alleged in the Second Amended Complaint have not cured the deficiencies identified by the union defendants in its motion to dismiss.

The defendants have jointly moved to dismiss the action. Motion to Dismiss (Dkt. No. 79). In his Memorandum in Opposition to Defendants' Joint Motion to Dismiss, Russo withdraws the ADA and CFEPA claims with respect to all defendants. Thus, the only remaining claims are the constitutional claims in the First and Second Counts of the Complaint.

### 1. Failure to State a First Amendment Claim

The defendants argue that the First Amendment claims made in the First and Second Counts of the Complaint should be dismissed because Russo fails to allege that the petition to the government, in the form of a lawsuit, touched upon a matter of public concern. Russo responds that he has stated a retaliation claim because he alleges that the actions taken by the defendants were in retaliation for Russo's participation in a federal corruption probe of the defendants, which is a matter of public concern because Marquis is a public official and the City is a public entity.

■■■ The First Amendment prohibits government interference with the right to "petition the government for a redress of grievances." U.S. Const., Amend. I. The rights of access to the courts is one right protected by the Petition Clause of the First Amendment. *California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 510, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972). "Although the right to petition and the right to free speech are separate guarantees, they are related and generally subject to the same constitutional analysis." *Wayte v. United States*, 470 U.S. 598, 610 n. 11, 105 S.Ct. 1524, 84 L.Ed.2d 547 (1985) (citing *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 911–915, 102 S.Ct. 3409, 73 L.Ed.2d 1215 (1982)); *White Plains Towing Corp. v. Patterson*, 991 F.2d 1049, 1059 (2d Cir.1993). Thus, a plaintiff must establish that he petitioned the government as a citizen on a matter of public concern and that the petition was at least a "substantial" or "motivating" factor in the adverse employment action. *White Plains*, 991 F.2d at 1058–59 (citing *Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977)).

■■■ Russo has failed to allege that he petitioned the government as a citizen on a matter of public concern. He argues that he makes such an allegation by stating "[d]efendant's actions were in retaliation to plaintiff filing a civil rights lawsuit and because of plaintiff's work as an informant for the federal government investigating corruption in the Hartford Police Department." Complaint (Dkt. No. 1) at 4 ¶ 17. Russo argues that cooperation in corruption probes is automatically a matter of public concern. However, Russo does not allege that his petition to the government through the lawsuit he filed was a matter of public concern or, alternatively, that the right to participate in the corruption probe is somehow protected by the First Amendment. Because Russo has failed to state a First Amendment claim, the defendants' motion to dismiss the First Amendment claims in the First and Second Counts is granted without prejudice to replead if a factual and legal basis exists to do so.

### 2. Failure to Exhaust

The defendants argue that the First and Second Counts of the Complaint should be dismissed in their entirety because Russo has failed to exhaust his administrative remedies under the Collective Bargaining Agreement. Russo responds that, because he has alleged the breach of a statutory duty of fair representation by the Union in *Russo v. Bailey*, he may circumvent the exhaustion doctrine. In the alternative, Russo argues that the court should not

apply the exhaustion doctrine because the intra-union remedies would have been inadequate, futile, and unreasonable under the circumstances.

As discussed above, a plaintiff in a section 1983 case is not generally required to exhaust his or her administrative remedies before bringing suit. *Patsy v. Board of Regents of Florida,* 457 U.S. 496, 515, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982). However, the *Patsy* holding does not apply in a procedural due process suit if the plaintiff failed to avail himself or herself of the right to be heard, which is the very right being asserted. *Narumanchi v. Bd. of Trustees of Conn. State Univ.,* 850 F.2d 70, 72 (2d Cir.1988); *Aronson v. Hall,* 707 F.2d 693, 694 (2d Cir.1983) (per curiam). Thus, the defendants' exhaustion argument can apply to the procedural due process claims against them but not the substantive due process or First Amendment claims.

While, as the court noted above, a consolidation order does not create a single case for jurisdiction purposes, the complaint in this case, unlike the complaint in *Russo v. City of Hartford,* refers to the collective bargaining agreement and the action against the union for its breach of duty of fair representation. Thus, Russo has alleged a breach of the union's duty of fair representation. A "wrongfully discharged employee may bring an action against his employer in the face of a defense based upon the failure to exhaust contractual remedies, provided the employee can prove that the union as bargaining agent breached its duty of fair representation in its handling of the employee's grievance." *Vaca v. Sipes,* 386 U.S. 171, 186, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). In addition, the Supreme Court has also noted that "in a § 1983 action, an arbitration proceeding cannot provide an adequate substitute for a judicial trial." *McDonald v. City of West Branch, Michi-*

*gan,* 466 U.S. 284, 292, 104 S.Ct. 1799, 80 L.Ed.2d 302 (1984). Thus, although *Vaca* involved a breach-of-contract claim, the interest in protecting a plaintiff's right to redress his grievances and not leave him remediless is even stronger in a § 1983 claim. Therefore, the court denies the defendants' motion to dismiss for lack of subject matter jurisdiction due to failure to exhaust administrative remedies.

## IV. CONCLUSION

With regard to *Russo v. City of Hartford,* 3:97cv2380, the defendants' motions to dismiss [Dkt. Nos. 66, 68] are GRANTED IN PART and DENIED IN PART. All defendants' motions to dismiss the procedural due process claim in the First Count of the Complaint are GRANTED. The city defendant's motion to dismiss the remainder of the First Count of the Complaint is DENIED. All defendants' motions to dismiss the Sixth Count of the Complaint are GRANTED for lack of subject matter jurisdiction. All defendants' motions to dismiss the Seventh Count of the Complaint are GRANTED for failure to state a claim. The plaintiff withdraws the Second, Third, Eighth, and Ninth Counts of the Complaint.

With regard to *Russo v. Bailey,* 3:00cv1794, defendants' motions to dismiss [Dkt. Nos. 70, 74, 77, 81, 83] are GRANTED IN PART and DENIED in part. All defendants' motions to dismiss the plaintiff's 42 U.S.C. § 1983 claims seeking injunctive relief are GRANTED. All defendants' motions to dismiss the plaintiff's 42 U.S.C. § 1983 claims seeking for money damages are DENIED. All defendants' motions to stay the proceedings pending an outcome of the state criminal case are DENIED.

The state defendants' motion to dismiss [Dkt. No. 77] the claims against them pursuant to the Eleventh Amendment is DE-

NIED AS MOOT. The state prosecutors' motion to dismiss the claims against them due to absolute immunity is DENIED. The state defendants' motion to dismiss the Second Count of the Second Amended Complaint is GRANTED. The state defendants' motion to dismiss the First, Sixth, Seventh, and Ninth Counts of the Second Amended Complaint on immunity grounds is GRANTED.

The police defendants' motion to dismiss [Dkt. No. 81] the First Count of the Second Amended Complaint on the basis of Qualified Immunity is DENIED. The police defendants' motion to dismiss the Second and Third Counts of the Second Amended Complaint is GRANTED.

The city defendant's motions to dismiss [Dkt. Nos. 70, 83] the Fifth Count of the Second Amended Complaint for failure to state a claim or for lack of subject matter jurisdiction are DENIED.

The union defendants' motion to dismiss [Dkt. No. 74] the Fourth Count of the Second Amended Complaint for failure to state a claim is GRANTED as to any act by the union defendants alone but DENIED as to the conspiracy allegation. The union defendants' motion to dismiss the Eighth Count of the Second Amended Complaint is DENIED.

With regard to *Russo v. Marquis*, 3:00cv2382, the defendants' motion to dismiss [Dkt. No. 79] is GRANTED IN PART and DENIED IN PART. The motion to dismiss the First Amendment claim in the First and Second Counts of the Complaint is GRANTED for failure to state a claim. The motion to dismiss the remaining claims in the First and Second Counts of the Complaint is DENIED. The plaintiff withdraws the remaining Counts of the complaint.

With regard to any motions to dismiss that were granted, the court grants such motions without prejudice to replead the claims if there is a factual and legal basis to do so that is consistent with this ruling. If the plaintiff seeks to replead, he must do so by August 23, 2001. With regard to any motions to dismiss that were denied, the court denies such motions without prejudice to renew such arguments upon further development of the record.

**SO ORDERED.**