**Millicent HUFF, Plaintiff,**

v.

**WEST HAVEN BOARD OF EDUCATION, et al., Defendants.**

**No. Civ. 3:97CV584(PCD).**

United States District Court,
D. Connecticut.

March 19, 1998.

W. Martyn Philpot, Jr., Laura Lee A. Dorflinger, Law Office of Martyn Philpot, New Haven, CT, for plaintiff.

Floyd Joseph Dugas, Richard J. Buturla, Warren L. Holcomb, Berchem, Moses & Devlin, P.C., Milford, CT, for defendants.

### RULING ON MOTION TO DISMISS

DORSEY, District Judge.

Plaintiff alleges race discrimination by Defendants in denying her employment in the West Haven school system, in violation of the Due Process Clause and the Equal Protection Clause of the Fifth and Fourteenth Amendments to the United States Constitu-

tion, Article One, Section One of the Connecticut Constitution, 42 U.S.C. § 1981, § 1983 and Conn. Gen.Stat. § 10–235.[1] Plaintiff also alleges state law claims for negligent and intentional infliction of emotional distress.[2] Defendants move to dismiss.

## I. BACKGROUND

The following facts are presumed to be true for purposes of this motion. Plaintiff, an African–American female, submitted numerous applications during 1992–1993 for permanent employment with the West Haven school system, including positions involving social work, drug counseling, administration and clerical work. Amended Complaint ¶¶ 9–10. Plaintiff had worked as a substitute "production worker" at the West Haven High School and in the Food Services Division. *Id.* ¶ 11. She claims that she was "more than qualified" for the positions for which she applied but was rejected for less qualified white applicants. *Id.* ¶¶ 11–12.

Plaintiff received only one interview in response to her applications. *Id.* ¶ 13. The interviewer failed to determine the time it took Plaintiff to complete a typing test even though the purpose of the test was to assess the "accuracy and time relative to her typing skills...." *Id.* Plaintiff alleges that the West Haven Board of Education (the "Board") policy or custom is to deprive "individuals, such as plaintiff, of their constitutional rights." *Id.* ¶ 14.

## II. DISCUSSION

### A. Standard of Review

A motion to dismiss should be granted only when "it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Goldman v. Belden,* 754 F.2d 1059, 1065–66 (2d Cir.1985) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). "In determining the motion the Court shall consider only those facts that appear on the face of the complaint." *Williams v. Avco Lycoming,* 755 F.Supp. 47, 49 (D.Conn.1991) (citation omitted). All facts alleged in the complaint are presumed to be true and are considered most favorably to the non-movant. *Id.*

### B. "Persons" under § 1983

To state a claim under § 1983, Plaintiff must allege a constitutional deprivation by "persons" acting under color of state law. 42 U.S.C. § 1983. Defendants move to dismiss Plaintiff's claim under § 1983 because the Board and its members are not "persons." [3]

Defendants' position is without merit. Almost twenty years ago the Supreme Court held that "Congress *did* intend municipalities and other local government units to be included among those persons to whom § 1983 applies." *Monell v. Dep't of Social Services of City of New York,* 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (emphasis in original).[4] Local government bodies may be sued directly under § 1983 for monetary, declaratory, or injunctive relief where the allegedly unconstitutional action was the result of an official policy or custom. *Id.* at 690–91, 98 S.Ct. 2018. *Monell* did not exclude school boards. *See id.* at 696–97, 98 S.Ct. 2018.[5]

Defendants erroneously rely on *Will v. Michigan Dep't of State Police,* 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). *Will* held that "neither a State nor its officials

---

1. Plaintiff withdrew Count Three. Plaintiff's Memorandum in Opposition to Defendants' Revised Motion to Dismiss ("Memo.Opp."), p. 3 n. 3.

2. After Defendants filed their motion to dismiss, Plaintiff filed an amended complaint adding a fourth cause of action for negligent infliction of emotional distress. Defendants filed a supplemental memorandum in support of their original motion, which addresses the fourth count.

3. Plaintiff does not allege in her Amended Complaint that Defendants were acting under color of state law. Defendants did not move to dismiss on this basis.

4. The defendants in *Monell* were sued solely in their official capacities. 436 U.S. at 661, 98 S.Ct. 2018.

5. A school board, however, is not liable under *respondeat superior* for the acts of its members. *See Monell,* 436 U.S. at 691, 98 S.Ct. 2018.

acting in their official capacities are 'persons' under § 1983." *Id.* at 71, 109 S.Ct. 2304. *Will* was based, in part, on the States' Eleventh Amendment immunity. *Id.* at 63–67, 109 S.Ct. 2304. The Supreme Court expressly distinguished *Monell:*

> *Monell* itself is not to the contrary. True, prior to *Monell* the Court had reasoned that if municipalities were not persons then surely States also were not. And *Monell* overruled *Monroe*, undercutting that logic. But it does not follow that if municipalities are persons then so are States. States are protected by the Eleventh Amendment while municipalities are not, and we consequently limited our holding in *Monell* 'to local government units which are not considered part of the State for Eleventh Amendment purposes.' Conversely, our holding here does not cast any doubt on *Monell,* and applies only to States or governmental entities that are considered 'arms of the State' for Eleventh Amendment purposes.

*Id.* at 70, 109 S.Ct. 2304 (internal and external citations omitted).[6]

Defendants also erroneously rely on *Lombard v. Bd. of Educ. of City of New York,* 440 F.Supp. 577 (E.D.N.Y.1977), and *Gentile v. Wallen,* 562 F.2d 193 (2d Cir.1977). In *Gentile,* the Second Circuit relied on its earlier decision in *Monell v. Dep't of Social Services of City of New York,* 532 F.2d 259 (2d Cir. 1976), and *Kornit v. Bd. of Educ.,* 542 F.2d 593 (2d Cir.1976) *(per curiam ), vacated,* 438 U.S. 902, 98 S.Ct. 3118, 57 L.Ed.2d 1144 (1978), in holding that there is no cause of action for damages against a school board or

its members in then official capacity under § 1983. *Gentile,* 562 F.2d at 195. Those cases are no longer valid in light of the Supreme Court's reversal in *Monell,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611.[7]

Later authority in this circuit recognizes as viable a cause of action against a school board and its members for damages in their official capacity under § 1983. *See Terminate Control Corp. v. Horowitz,* 28 F.3d 1335, 1348 (2d Cir.1994) (addressing what constitutes an official policy or custom under *Monell* for purposes of a § 1983 claim against the board of education); *Newman v. Bd. of Educ. of City School Dist. of New York,* 594 F.2d 299, 303 (2d Cir.1979) ("[i]n view of the Supreme Court's later holding in *Monell v. Department of Social Services,* ..., that municipalities are liable in damages under § 1983" summary judgment could not be properly granted on the basis that school boards are not liable for damages under § 1983).[8]

Accordingly, Defendants' argument that the school board and its members are not "persons" subject to liability for damages under § 1983 is without merit, and Count One will not be dismissed on that basis.[9]

### C. Fourteenth Amendment Due Process Claim

 Plaintiff claims that Defendants' actions violated her constitutional due process rights under the Fourteenth Amendment.[10] Defendants move to dismiss on the basis that Plaintiff has not alleged a protected property

---

**6.** Defendants do not argue that the school board is entitled to Eleventh Amendment immunity in their official capacity.

**7.** In *Gentile,* the court of appeals noted that the Supreme Court granted *certiorari* in *Monell,* 532 F.2d 259, but until a decision was rendered no viable cause of action existed in the Second Circuit. *See Gentile,* 562 F.2d at 196.

**8.** Defendants also rely on *Mazza v. Hendrick Hudson Central School Dist.,* 942 F.Supp. 187 (S.D.N.Y.1996), and *Mazurek v. Wolcott Bd. of Educ.,* 815 F.Supp. 71 (D.Conn.1993). Those cases dismissed § 1983 claims on the grounds that the Second Circuit does not recognize a claim for damages under § 1983 against a school board or its members in their official capacities. Both cases relied on *Gentile,* 562 F.2d 193,

which, as discussed above, was overruled by the Supreme Court. Accordingly, the Court respectfully declines to follow these cases.

**9.** Whether Plaintiff has adequately alleged a custom or policy to hold the school board liable was not addressed by the parties.

**10.** It is unclear from Plaintiff's Amended Complaint whether she intended to allege a violation of § 1983 based on a denial of her right to due process, or a separate due process claim. In her opposition, she apparently sets forth two separate claims—race discrimination under § 1983 and a due process violation under the Fourteenth Amendment.

or liberty interest. Although it is unclear from Plaintiff's Amended Complaint whether she claims a property or liberty interest, Plaintiff has not sufficiently pled either.[11]

"Although the Constitution protects property interests, it does not create them." *Donato v. Plainview–Old Bethpage Cent. School Dist.,* 96 F.3d 623, 629 (2d Cir. 1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 1083, 137 L.Ed.2d 218 (1997). Property interests are created and defined " 'by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.' " *Id.* (quoting *Bd of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)). Plaintiff must establish that she has a "constitutionally-protected 'legitimate claim of entitlement' " to the positions which she sought, rather than "an unprotected unilateral expectation of employment" to have a protected property interest. *See Donato,* 96 F.3d at 629 (citations omitted)

The liberty interest protected by the Fourteenth Amendment includes the freedom "to engage in any of the common occupations of life." *Meyer v. Nebraska,* 262 U.S. 390, 399, 43 S.Ct. 625, 67 L.Ed. 1042 (1923). Certain actions by a potential employer in refusing to rehire an employee may implicate an employee's liberty interests. *See Donato,* 96 F.3d at 630 (citing *Roth,* 408 U.S. at 573, 92 S.Ct. 2701). The mere act of not rehiring an individual, however, does not infringe a protected liberty interest. Rather, the actions must be of the kind to effectively hinder the individual's ability to practice in her profession. *Id.* at 630–31. For instance, stigmatizing public comments regarding the employee's dishonest, illegal or immoral behavior might deprive the employee of the "freedom to take advantage of other employment opportunities," *id.* at 630 (quotation omitted), thereby implicating a liberty interest:

Plaintiff alleges in her Amended Complaint that she was qualified for the positions for which she applied, Defendants refused to hire her based on her race and that Defendants' actions deprived her of liberty without due process of law. Plaintiff has not sufficiently pled a constitutionally protected liberty or property interest in a position with the school. Accordingly, Plaintiff's claim under the due process clause is dismissed.

### D. Intentional Infliction of Emotional Distress

To state a claim for intentional infliction of emotional distress under Connecticut law, Plaintiff must allege (1) that Defendants intended to inflict emotional distress or knew or should have known that such distress was a likely result of their conduct; (2) that the conduct was extreme and outrageous, (3) that Defendants' conduct was the cause of the Plaintiffs distress, and (4) that the emotional distress sustained by the Plaintiff was severe. *Petyan v. Ellis,* 200 Conn. 243, 510 A.2d 1337 (1986).

The standard in Connecticut to demonstrate extreme and outrageous conduct is stringent. "[E]xtreme and outrageous" conduct is defined as that which "exceed[s] all bounds usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind." *DeLaurentis v. New Haven,* 220 Conn. 225, 267, 597 A.2d 807 (1991). Whether conduct may be "reasonably regarded" as extreme and outrageous is a question, in the first instance, for the court. *See Kintner v. Nidec–Torin Corp.,* 662 F.Supp. 112, 114 (D.Conn.1987). Mere conclusory allegations are insufficient as a matter of law to support a cause of action for intentional infliction of emotional distress. *See Ruffolo v. Oppenheimer & Company, Inc.,* No. 90 Civ 4593, 1991 WL 17857, at *2 (S.D.N.Y. Feb.5, 1991.), *aff'd,* 949 F.2d 33 (2d Cir.1991), *Melfi v. City of Danbury,* No. 311564, 1993 WL 360650, at *2 (Conn.Super.Ct. Sept.8, 1993). "Even 'notice

---

**11.** It is also not clear whether Plaintiff intends to assert a substantive or procedural due process claim. Regardless, to state a cognizable claim under either theory, Plaintiff must allege a pro-

tected property or liberty interest. *See Bd. of Regents v. Roth,* 408 U.S. 564, 570–71, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

pleading' under the Federal Rules requires the allegation of minimal supporting facts." *Ruffolo,* 1991 WL 17857, at *2 (citation omitted).

Plaintiff does not allege any facts in support of her intentional infliction of emotional distress claim. Instead, Plaintiff merely alleges that Defendants' conduct was extreme and outrageous—a legal conclusion. Plaintiff's memorandum in opposition to Defendants' motion to dismiss similarly fails to identify any conduct by Defendants, which if assumed to be true, constitutes extreme and outrageous behavior.

 Presumably, Plaintiff claims that Defendants' alleged racial discrimination in denying her permanent employment is extreme and outrageous conduct in and of itself. However, allegations of a wrongful refusal to hire based on racial discrimination, without more, are insufficient to support an intentional infliction of emotional distress claim. *See Martin v. Citibank, N.A.,* 762 F.2d 212, 220 (2d Cir.1985) (construing "extreme and outrageous" under New York law). *Cf. Parsons v. United Technologies Corp., Sikorsky Aircraft Div., et al.,* 243 Conn. 66, 89, 700 A.2d 655 (1997) (plaintiff's conclusory allegations of wrongful, retaliatory discharge, without more, are insufficient to support a negligent infliction of emotional distress claim). " 'The mere act of firing an employee, even if wrongfully motivated, does not transgress the bounds of socially tolerable behavior.' " *Parsons,* 243 Conn. at 89, 700 A.2d 655 (citing *Madani v. Kendall Ford, Inc.,* 312 Or. 198, 204, 818 P.2d 930 (1991)).[12] The employer's motive for not hiring an employee is not relevant to whether the act was outrageous; it is the act itself which must be outrageous. *Cf. Madani,* 312 Or. at 204, 818 P.2d 930 (addressing intentional infliction of

emotional distress claim relating to wrongful discharge from employment).

 Plaintiff's Amended Complaint is devoid of any factual allegations regarding Defendants' conduct. The only "conduct" alleged is the conclusion that Defendants did not hire Plaintiff because of her race. It is the reason Defendants allegedly did not hire Plaintiff—their motive in not hiring her—of which she complains. Her alleged emotional distress resulted from her failure to be hired by Defendants, not from any actions taken by Defendants during the application process.

Plaintiff has not sufficiently pled extreme and outrageous conduct in support of her intentional infliction of emotional distress claim. Accordingly, Defendants' motion to dismiss Plaintiff's claim of intentional infliction of emotional distress is GRANTED.[13]

### E. Negligent Infliction of Emotional Distress

 To support a claim for negligent infliction of emotional distress, Plaintiff has the "burden of pleading and establishing that 'the defendant should have realized that its conduct involved an unreasonable risk of causing emotional distress and that distress, if it were caused, might result in illness or bodily harm.' " *Morris v. Hartford Courant Co.,* 200 Conn. 676, 683, 513 A.2d 66 (1986) (citation and emphasis omitted). Failure to " 'introduce evidence from which it could be inferred that [the] defendants' conduct was so egregious that it should have realized that it was creating a risk of causing emotional distress defeats a claim of unintentional infliction of emotional distress.' " *Young v. Bank of Boston Connecticut,* No. 3:93cv1642, 1995 WL 908616, at *7 (D.Conn. March 31, 1995) (citation omitted).

12. Although the Connecticut Supreme Court in *Parsons* was considering a negligent infliction of emotional distress claim based on wrongful termination, the court's analysis is equally applicable to an intentional infliction of emotional distress claim, *Madani,* 312 Or. at 204, 818 P.2d 930, relied on by the court in *Parsons,* involved a dismissal of an *intentional* infliction of emotional distress claim.

13. Defendants also moved to dismiss based on Plaintiff's failure to allege an intent to cause emotional distress and Plaintiff's failure to sufficiently allege "severe" emotional distress. Intent was pled in Plaintiff's Amended Complaint and thus this argument is moot. Since Count Two is dismissed due to the insufficiency of Plaintiff's allegations of outrageous conduct, Defendants' alternative argument to dismiss need not be addressed.

Like Plaintiff's claim for intentional infliction of emotional distress, this claim fails due to Plaintiff's failure to allege any facts in support. "The mere termination of employment, even where it is wrongful, is therefore not, by itself, enough to sustain a claim for negligent infliction of emotional distress." *Parsons*, 243 Conn. at 88–89, 700 A.2d 655. "Such a claim must be accompanied by additional allegations of unreasonable conduct which occurred during the termination process or at the time of discharge." *M. Nguyen v. Newberry Indus., Inc.*, No. CV970571319, 1997 WL 746442, at *3 (Conn.Super.Ct. Nov.14, 1997). For the reasons stated with respect to Plaintiff intentional infliction of emotional distress claim, her negligent infliction of emotional distress claim is dismissed.

### F. Section 1981 Claim

To state a cause of action under § 1981, Plaintiff "must allege facts in support of the following elements: (1) the plaintiff is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) the discrimination concerned one or more of the activities enumerated in the statute (i.e., make and enforce contracts, sue and be sued, give evidence, etc.)." *Mian v. Donaldson, Lufkin & Jenrette Securities*, 7 F.3d 1085, 1087 (2d Cir. 1993) (citation omitted). An "essential element to [this] cause of action is a requirement that the alleged discrimination took place because of the individual's race." *Id.* at 1088. Section 1981 is violated only by purposeful discrimination. Conclusory allegations of discrimination because of race are insufficient to establish a cause of action for a violation of civil rights:

> [C]omplaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights instead of a litany of general conclusions that shock but have no meaning.

*Barr v. Abrams*, 810 F.2d 358, 362–63 (2d Cir.1987).

Plaintiff's Amended Complaint sets forth only conclusory allegations of discrimination. Plaintiff's Amended Complaint is devoid of any factual allegations indicating a deprivation of her rights because of her race. Accordingly, Plaintiff's § 1981 claim is dismissed.

### III. CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss [doc. # 11, # 13] are GRANTED. The motion to dismiss Plaintiff's § 1983 claim on the grounds that the Board and the Board members are not "persons" is denied. However, that claim (Count One) is dismissed because Plaintiff has failed to sufficiently plead a constitutional deprivation. Plaintiff's intentional and negligent infliction of emotional distress claims (Counts Two and Four) and § 1981 claim (Count One) are also dismissed for failure to state a claim. Plaintiff's claim under Conn.Gen.Stat. § 10–235 (Count Three) is dismissed based on Plaintiff's voluntary withdrawal.

In the interests of justice, Plaintiff shall have until April 17, 1998, within which to file a motion to amend her complaint, with an attached proposed amended complaint, if such amendment would remedy the pleading defects set forth herein. In the absence of such filing the case will be closed.

**SO ORDERED.**