**Susan NUCIFORA, Plaintiff**

v.

**BRIDGEPORT BOARD OF EDUCATION, Defendant**

**No. 3:99–CV–00079 (EBB).**

United States District Court, D. Connecticut.

Sept. 24, 2001.

Amy E. Johnson, LoRicco, Trotta & LoRicco, W. Martyn Philpot, Jr., Laura Lee A. Dorflinger, Marc L. Glenn, Law Offices of W. Martyn, Philpot, Jr., LLC, New Haven, CT, US Court of Appeals, Office of the Clerk, New York City, for Plaintiff.

Lisa M. Grasso, Loraine M. Cortese–Costa, Stacey M. Daves–Ohlin, Durant, Nichols, Houston, Hodgson & Cortese–Costa PC, Bridgeport, CT, for Defendant.

### RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

ELLEN B. BURNS, Senior District Judge.

### INTRODUCTION

Susan Nucifora ("Nucifora" or "Plaintiff") brought an original lawsuit against the present Defendant (the "Board" or "Defendant"), alleging violations of the Americans with Disabilities Act ("ADA"), Titles I and II, the Civil Rights Acts of 1964 and 1991 and Title VII thereof, and the negligent and intentional infliction of emotional distress. The Complaint was also brought against the Superintendent of Schools and three members of the Alternative Evaluation Program ("AEP"), in which Plaintiff had been placed for several years prior to her termination. Following a Ruling on Defendants' Motion to Dismiss, the only remaining claims are those brought under Title II of ADA, and the negligent and/or intentional infliction of emotional distress. The only Defendant remaining is the Board, which now moves for summary judgment on the claims of the Amended Complaint.

### STATEMENT OF FACTS

The Court sets forth only those facts deemed necessary to an understanding of the issues raised in, and decision rendered on, this Motion. The Court assumes familiarity with its Ruling on Motion to Dismiss and incorporates those facts by reference herein. The following facts are taken from the Amended Complaint, the memoranda of law and exhibits thereto, and Defendant's Local Rule 9(c) Statement.

■ Local Rule 9(c)(1) imposes on the moving party the requirement of annexing to the motion for summary judgment a "separate, short and concise statement of material facts which are not in dispute." Local Rule 9(c)(2) places a parallel burden upon the resisting party to include a "separate, short and concise statement of material facts as to which it is contended that there exists a genuine issue to be tried." Local Rule 9(c)(1) provides that the facts set forth by the moving party in accordance with that Rule shall be deemed admitted unless controverted by the opposing party in accordance with Rule 9(c)(2). Local Rule 9(c)(3) makes clear that these requirements are in addition to those of Fed.R.Civ.P. 56.

■ The purpose of a Rule 9(c)(2) Statement is to make affirmative statements which will aid and inform the Court. Quite naturally, the complete failure to comply with the requirements of such a rule would be grounds for summary judgment in and of itself. *See Dusanenko v. Maloney*, 726 F.2d 82, 84 (2d Cir.1984)(no filing in compliance with local rule; grant of summary judgment); *Wyler v. United States*, 725 F.2d 156, 158 (2d Cir.1983)(affirming grant of summary judgment); *N.S. v. Stratford Bd. Of Educ.*, 97 F.Supp.2d 224 (D.Conn.2000) (granting summary judgment); *Booze v. Shawmut Bank, Connecticut*, 62 F.Supp.2d 593 (D.Conn.1999)(granting summary judg-

ment); *Trzaskos v. St. Jacques*, 39 F.Supp.2d 177 (D.Conn.1999)(granting summary judgment); *Kusnitz v. Yale University School of Medicine*, 3:96–CV–02434 (EBB) (D.Conn. July 16, 1998)(granting summary judgment); *Corn v. Protective Life Ins. Co.*, 1998 WL 51783 (D.Conn. Feb. 4, 1998)(granting summary judgment); *Peterson v. Saraceni*, 1997 WL 409527 (D.Conn. July 16, 1997)(granting summary judgment); *Scianna v. McGuire, et al.*, 1996 WL 684400 (D.Conn. March 21, 1996)(granting summary judgment); *Burrell v. Lucas*, 1992 WL 336763 (D.Conn. Oct. 14, 1992)(summary judgment granted) *Soto v. Meachum*, 1991 WL 218481 (D.Conn. August 28, 1991) (granting summary judgment). Plaintiff has completely failed to comply with this Rule, in that no Rule 9(c)(2) Statement in compliance with this Rule was filed by her. Initially, she disputes facts, such as "6. Plaintiff's abuse of alcohol began in or around the Fall of 1994"; "7. During the Fall of 1994, Plaintiff began drinking on a daily basis." What there is no dispute about is that Plaintiff testified to same over and over again in her deposition. The same is true as to her alleged dispute of her teaching evaluations in 1993–1995. Her, and other, testimony, both oral and documentary evidence, clearly demonstrate that to dispute these facts borders on the frivolous. As to the disputed "facts" she sets before the Court, they consist of four questions which are legal questions for this Court to answer. However, in the interests of judicial fairness, the Court will briefly consider the issues in this case and decide the case on the merits. However, all facts set forth in Defendant's complying Rule 9(c)(1) Statements will be deemed admitted by Plaintiff for purposes of the decision on this Motion.

Plaintiff was evaluated by the Board on an annual basis, as were all the teachers in the Bridgeport School System. Ordinari-

ly, a teacher would be evaluated on a Form A, which is a fairly simple series of check-marked boxes, one year, and during the next year, be evaluated on a Form B, in which the Defendant decides on two or three specific objectives that would be used to improve the individual's performance and skills. Connolly Dep. at 45.

While the normal cycle is an annual change between Forms, a teacher may be maintained on a Form B appraisal if the specific objectives listed the prior year have not been met. If the areas of notable concern continue, a teacher may be placed within an Alternative Evaluation Program ("AEP"), which is an initial step in the process afforded teachers under the Connecticut Fair Dismissal Act. Connolly Dep. at 39–41. In accordance with Defendant's Staff Evaluation Implementation Plan, the Superintendent meets with the teacher at issue regarding her performance and determines whether an AEP is warranted. *Id.* at 23–27.

Plaintiff's unsatisfactory evaluations in each of her teaching requirements began to reflect notable concerns in these areas, and in the area of punctuality, in school years 1992–93, 1993–94, 1994–95 and 1995–96. As reflected in the evaluations, Plaintiff's lesson plans were at times missing and were incomplete; she was not teaching the curriculum and was inconsistent in her delivery; she was ineffective in classroom management; and student portfolios lacked numerous entries and adequate teacher feedback. Undella Dep. at Ex. 1, 9, 10.

After being maintained on a Form B for the 1994–95 school year, her supervisors recommended that Plaintiff be placed in an AEP. During the conference at which this was announced to Plaintiff, she was asked if she had any problems which were affecting her teaching performance. She only told the persons present that she was getting divorced and was moving. She never mentioned alcohol. Plaintiff Dep. at 264; (Connolly Dep. at 85–87).

Her team consisted of one Joyce Undella ("Undella"), the head of the English Department; Joseph Rodriquez ("Rodriquez"), her principal; and William Glass ("Glass"), the Instructional Director. It was the job of these individuals to observe Plaintiff in a classroom setting, give her specifics and/or comments and be ready to help her at any time, in order that Plaintiff meet her objectives.

Due to Plaintiff's failure to improve her performance, the AEP team advised her that she was being kept in the AEP program for the school year 1996–97. On June 21, 1997, the AEP team gave Plaintiff its summary of her continued non-performance, which summary contained the fact that the team intended to recommend her dismissal to the Superintendent. Plaintiff walked out of the meeting as soon as she had read this.

Rodriquez sent her close colleague, one Chris DelBene, and two other English teachers to Plaintiff's home because he was worried about her. Plaintiff testified that it was at this time, and that this was the first time, she told these three individuals, her union representative, and her union president that she was an alcoholic. She also called Rodriquez and advised him of the same, which news he responded to, according to Plaintiff, "with surprise." Plaintiff Dep. at 114. The school system offered her a one-year leave of absence, without pay but with medical benefits, which she rejected.

As to her drinking, Plaintiff testified that, prior to the Fall of 1989, she was a social drinker. Her problem drinking began at that time, when she would drink every day. Plaintiff's Dep. at 31–33, 74. As her drinking escalated in 1994, she

began to suffer "blackouts", or periods of no recollection, on a more frequent basis. *Id.* at 32. She would begin drinking after work and would often drink until 2–3:00 A.M. Although she testified that she was "impaired", had difficulty focusing on class at all times, and was tardy quite often, due to being hungover or "euphoric" from the night before, she consistently testified that she believed she was meeting both district and state requirements for her teaching position. *Id.* at 39, 41, 132, 135, 137. She testified that, at times, she would have difficulty walking around her classroom due to lack of food or sleep, but that her performance was still adequate under the guidelines. *Id.* at 37. Her testimony was also consistent with her Amended Complaint, wherein she first pleads that she is substantially limited in the area of working, but then pleads that she is qualified for her job as demonstrated by favorable performance appraisals. *Cf.* Parag. 12 with 13.

She listed various other difficulties with her life activities, such as seeing, walking, hearing, speech, and driving, but acknowledged that this predominantly occurred when she was intoxicated. *See* Plaintiff's Dep. at 327–28; 335–36. She stated that she did not recall any situations in which she did not respond appropriately in the classroom. *Id.* at 83–84.

She testified further that it would have been possible for her to take a leave and go into treatment, but that she refused the Board's offer on the advice of her then attorney. *Id.* at 159–60. She also testified that the offer of leave was unreasonable because it did not direct her to treatment. *Id.* Finally, the attorney counseled her to reject the leave because it was unpaid. She, too, believed a leave without pay was an unreasonable accommodation but offered no alternative to this. *Id.* at 170.

As to her claim of disparate treatment in her Amended Complaint, at her deposition Plaintiff could point to no other alcoholic teacher who was given a leave on better terms than that which was offered to her. She also had no knowledge of persons being disabled and being given leave. *Id.* at 106–107. She finally testified that she would leave that allegation "to [her] counsel. I think that that just happened to remain in this amended complaint." *Id.* at 108–110. Similarly, when referred to the charge of discrimination filed with the EEOC, Plaintiff could offer no support for her claim of disparate treatment as compared to other teachers. "I had no specific facts at that time... There was [sic] no facts." *Id.* at 174–75.

## LEGAL ANALYSIS

### I. *The Standard of Review*

In a motion for summary judgment the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). *See also Anderson v. Liberty Lobby,* 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment). Although the moving party has the initial burden of establishing that no factual issues exist "[o]nce that burden is met, the opposing party must set forth specific facts demonstrating that there is a genuine issue for trial." *Sylvestre v. United States,* 771 F.Supp. 515, 516 (D.Conn.1990).

If the nonmoving party has failed to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof at trial, then summary judgment is appropriate. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "In

such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322–23, 106 S.Ct. 2548. *Accord, Goenaga v. March of Dimes Birth Defects Foundation,* 51 F.3d 14, 18 (2d. Cir.1995)(movant's burden satisfied by showing if it can point to an absence of evidence to support an essential element of nonmoving party's claim). In this regard, mere assertions and conclusions of the party opposing summary judgment are not enough to defend a well-pleaded motion. *Lamontagne v. E.I. DuPont de Nemours & Co.,* 834 F.Supp. 576, 580 (D.Conn.1993), *aff'd* 41 F.3d 846 (2d Cir.1994).

The court is mandated to "resolve all ambiguities and draw all inferences in favor of the nonmoving party. . . ." *Aldrich v. Randolph Cent. Sch. Dist.,* 963 F.2d 520, 523 (2d Cir.), *cert. denied,* 506 U.S. 965, 113 S.Ct. 440, 121 L.Ed.2d 359 (1992). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci,* 923 F.2d 979, 982 (2d Cir.), *cert. denied,* 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991). If the nonmoving party submits evidence which is "merely colorable", or is not "significantly probative," summary judgment may be granted. *Anderson,* 477 U.S. at 249–52, 106 S.Ct. 2505 (scintilla of evidence in support of plaintiff's position insufficient; there must be evidence from which a jury could reasonably find in his favor). *See also, Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

The Second Circuit has held that summary judgment is appropriate in certain discrimination cases, regardless that such cases may involve state of mind or intent. "The summary judgment rule would be rendered sterile, however, if the mere incantation of intent or state of mind would operate as a talisman to defeat an otherwise valid motion. Indeed, the salutary purposes of summary judgment—avoiding protracted, expensive and harassing trials—apply no less to discrimination cases than to commercial or other areas of litigation." *Meiri v. Dacon,* 759 F.2d 989, 998 (2d Cir.1985). *See Shumway v. United Parcel Service, Inc.,* 118 F.3d 60 (2d Cir. 1997) (upholding grant of summary judgment for defendant in Title VII sex discrimination case). The Supreme Court has recently reiterated that trial courts should not treat discrimination differently from other questions of fact. *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

"[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact. As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson* 477 U.S. at 247–48, 106 S.Ct. 2505 (emphasis in original).

## II. *The Standard As Applied*

The ADA prohibits covered employers, such as Defendant herein, from discriminating against an otherwise qualified employee "because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

42 U.S.C § 12112(a). The statute defines "disability" as "(a) a physical or mental impairment that substantially limits one of more of life's major activities; (b) a record of such impairment; or (c) being regarded as having such an impairment." 42 U.S.C. § 12102(2).

In a case under the ADA, this Court is to apply the now well-settled burden-shifting framework of *McDonnell Douglas v. Green*, 411 U.S. 792, 802–04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) in order to determine whether summary judgment is warranted. *Weinstock v. Columbia University*, 224 F.3d 33, 34 (2d Cir.2000).

■ First, the Plaintiff must establish a prima facie case of discrimination by showing that: (1) she was an individual with a disability within the meaning of the statute; (2) that the Board had notice of her disability; (3) that with reasonable accommodation she could perform the essential functions of the position sought; and (4) that the Board refused to make such accommodation. *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 332 (2d Cir. 2000); *Mitchell v. Washingtonville Cent. School Dist.*, 190 F.3d 1, 6 (2d Cir.1999).

Ordinarily, this is not the end of the story. If the plaintiff succeeds in setting forth her *prima facie* case, the burden shifts to the Defendant to articulate a legitimate, non-discriminatory reason for the employment action. *See Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Should the Defendant set forth such a non-discriminatory reason, the presumption arising from the *prima facie* case drops from the picture. *St Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 510–11, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). For the case to continue, the Plaintiff must then come forward with evidence that the Defendant's proffered non-discriminatory reason is a mere pretext for discrimina-

tion. The Plaintiff must "produce not simply 'some' evidence, but 'sufficient evidence to support a rational finding that the legitimate, non-discriminatory reasons proffered by the [defendant] were false and that more likely than not [discrimination] was the real reason for the [employment action]'". *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 714 (2d Cir.1996), *quoting Woroski v. Nashua Corp.*, 31 F.3d 105, 110 (2d Cir.1994).

In the present case, the Court finds that it is not necessary to perform this burden-shifting analysis, as it finds that Plaintiff has completely failed to set forth a prima facie case.

Plaintiff is not a covered individual simply by virtue of her alleged alcoholism, unless that illness substantially limits one or more of her major life activities. Although, as noted above, she pleads in her Amended Complaint that she is limited in the major life activity of working, two paragraphs later, she indicates that she is not. Further, although she testified that she was an alcoholic and was "handicapped" in the classroom (Plaintiff's dep. at 154), her testimony was at all times consistent that, in her opinion, she believed that her teaching skills reached the required levels of both her Board and the State.

The Court's analysis in *Burch v. Coca-Cola Co.*, 119 F.3d 305, 316 (5th Cir.1997) is particularly instructive.

"Burch makes reference to his testimony that his ability to walk, talk, think, and sleep were affected when he drank too much. Burch also testified that he had hangovers in the morning that affected his memory. That Burch's inebriation was temporarily incapacitating is not determinative. Burch produced no evidence that the effects of his alcoholism-induced inebriation were qualitatively

different than those achieved by an overindulging social drinker; in both situations, the natural result of overindulgence is the *temporary* impairment of senses, dulled reactions, and the prospect of a restless sleep, followed by an unpleasant morning. Although Burch's alcoholism assuredly affected how he lived and worked, 'far more is required to trigger coverage under § 12102(2)(A).' ... Burch's testimony that his inebriation was frequent does not make it a permanent impairment. Permanency, not frequency, is the touchstone of a substantially limiting impairment."

*Burch*, 119 F.3d at 316 (emphasis in original; citation omitted). *See also, Cavuoto v. Oxford Health Plans, Inc.*, 3:99–CV–00446 (EBB)(D. Conn. June 13, 2001)("Temporary disabilities are not covered by the ADA"); *Stronkowski v. St. Vincent's Medical Center*, 1996 WL 684407 at *7, 1996 U.S. Dist. LEXIS 22304 at *18 (D.Conn. August 1, 1996)("[T]emporary injuries ... without substantial limitations and permanent effects, do not warrant protection of the ADA".).

■ The Court finds that this case is strikingly similar to *Burch* and the result should be the same. Plaintiff testified that she was impaired in eating, sleeping, seeing, driving, and focusing but then admitted that these incidences occurred when she was intoxicated and that some of these afflictions occurred only infrequently. Such claims fail to set forth any genuine issue of material fact as to a permanent impairment which substantially impaired her life's activities.

■ With respect to her claim that she was impaired in the major activity of working, Plaintiff must show that she is "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and ability." 29 C.F.R. § 1630.2(j)(3)(I). The inability to perform a single, particular job does not constitute a substantial limitation in the activity of working. *Heilweil v. Mt. Sinai Hospital*, 32 F.3d 718, 723–24 (2d Cir. 1994), *cert. denied*, 513 U.S. 1147, 115 S.Ct. 1095, 130 L.Ed.2d 1063 (1995). Further, Section 12114(c)(4) of the ADA provides that a covered employer "may hold an employee who ... is an alcoholic to the same qualification standards for employment or job performance and behavior that such [employer] holds other employees, even if unsatisfactory performance or behavior is related to ... the alcoholism of such employee." This Section makes clear that Plaintiff cannot escape responsibility for her unsatisfactory job performance merely because she is an alleged alcoholic or because the conduct in question may be related in some part to her drinking.

In addition to her own pleadings and evidence that her performance was satisfactory, Plaintiff continued to work in the teaching profession after her termination. She was hired as a substitute teacher in the Milford and Shelton school systems on an as-needed basis. Plaintiff's Dep. at 8–9. Although to the date of the deposition Plaintiff had sought no assistance of any kind for her alleged alcoholism, she continues to be available to substitute teach and interviews for full-time positions. *Id.* at 8–11, 246–251. For all of these reasons, it is beyond cavil that Plaintiff cannot meet even the first prong of a prima facie case under the ADA.

Accordingly, there is no reason for this Court to examine the remaining three factors, as to do so would be to render an advisory opinion, which this Court declines to do.

■ Plaintiff also fails to set forth a claim for the intentional infliction of emotional distress. In order to establish such a cause of action, a plaintiff must demonstrate: (1) that the defendant intended to inflict emotional distress, or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe. *Petyan v. Ellis,* 200 Conn. 243, 253, 510 A.2d 1337 (1986).

■ The standard in Connecticut to demonstrate extreme and outrageous conduct is stringent. The Connecticut Supreme Court has defined the term "extreme and outrageous conduct": "The rule which seems to have emerged is that there is liability for conduct exceeding all bounds usually tolerated by a decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind." *Petyan,* 200 Conn. at 254 n. 5, 510 A.2d 1337, *quoting* Prosser and Keeton, *Torts* (5th ed.1984) § 12, p. 60.

■ Whether a defendant's conduct can be considered extreme and outrageous is a matter of law for the Court in the first instance. *Kintner v. Nidec–Torin Corp.,* 662 F.Supp. 112, 114 (D.Conn.1987). Mere conclusory allegations are insufficient to support a cause of action for this tort. *Huff v. West Haven Board of Education,* 10 F.Supp.2d 117, 122 (D.Conn.1998).

■ Plaintiff has completely failed to demonstrate that her termination was "extreme" or "outrageous", nor was the reasonable accommodation offered her. Her failure to perform satisfactorily to her supervisors in the AEP program for a period of two years was most certainly grounds for dismissal. Summary judgment is granted on this Count also.

■ Finally, the claim of negligent infliction of emotional distress fails, also. To support a claim for negligent infliction of emotional distress, Plaintiff had the "burden of pleading and establishing that 'the [D]efendant should have realized that [its] conduct involved an unreasonable risk of causing emotional distress and that distress, if it were caused, might result in illness or bodily harm.'" *Morris v. Hartford Courant,* Co., 200 Conn. 676, 683, 513 A.2d 66 (1986) (citation and emphasis omitted). Failure to " 'introduce evidence from which it could be inferred that [D]efendant's conduct was so egregious that it should have realized that it was creating a risk of emotional distress defeats a claim of unintentional infliction of emotional distress.'" *Young v. Bank of Boston Connecticut,* 1995 WL 908616 at * 7 (D.Conn. March 31, 1995) (citation omitted).

■ Like Plaintiffs' claim for the intentional infliction of emotional distress, this claim is without merit due to Plaintiff's failure to allege any facts in support of this tort. "The mere termination of employment, even if it was wrongful, is therefore not, by itself, enough to sustain a claim for negligent infliction of emotional distress." *Parsons v. United Technologies Corp., Sikorsky Aircraft Division et al.,* 243 Conn. 66, 88–89, 700 A.2d 655 (1997)(plaintiff's conclusory allegations of wrongful, discharge, without more, insufficient to support a negligent infliction of emotional distress claim). Inasmuch as this Court has found that the termination of Plaintiff's employment was perfectly justified, she has produced no other genuine issues of material fact to go forward on this claim.

### CONCLUSION

Plaintiff has set forth no genuine issues of material fact as to her claim under the

ADA or her two supplemental state law causes of action. Accordingly, Defendant's Motion for Summary Judgment [Doc. No. 44] is GRANTED. The Clerk is directed to close this case.

SO ORDERED.